IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DEONTE THOMAS, | CASE NO. 3:22-CV-00164-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ROCHELLE MOORE, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 3

PROCEDURAL HISTORY ............................................................................................ 3

   A.   Factual findings of the Court of Appeals ................................................. 3

   B.   Trial court proceedings ............................................................................ 7

   C.   Direct appeal ............................................................................................. 8

   D.   Petition to Vacate or Set Aside Judgment of Conviction or Sentence ............................ 9

   E.   Ohio Appellate Rule 26(B) Application to Reopen Appeal ........................... 12

   F.   Motion to Correct Illegal or Void Sentence ................................................. 14

FEDERAL HABEAS PETITION ................................................................................. 15

STANDARD OF REVIEW ........................................................................................... 18

PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW ...................................... 21

ANALYSIS .................................................................................................................. 26

   I.   Procedural Default ................................................................................. 27

      A.   Ground 5(a), Ground 9(d), Grounds 10(f) and (g), Ground 11(d), and Ground Fifteen are procedurally defaulted as they were not fairly presented in the state courts. .... 27

      B.   Grounds 11(a) and (f) and Ground 14 are procedurally defaulted due to Mr. Thomas's failure to comply with a state procedural rule. ................................... 29

      C.   Mr. Thomas has not established cause and prejudice or actual innocence to excuse the procedural default of his claims. ........................................... 34

   II.   Cognizability and Merits ................................................................... 40

A.    Ground 1 is not cognizable on federal habeas review and meritless. ........................ 40

B.    Ground 2 is meritless. ........................................................................................ 44

C.    Grounds 3 and 4 are meritless. .......................................................................... 47

D.    Ground 5(b) is not cognizable on federal habeas review. ............................................ 51

E.    Grounds 6 and 8 do not warrant habeas relief. ...................................................... 54

F.    Grounds 9(a), (b), and (c) also lack merit. ............................................................ 62

G.    Grounds 10(a), (b), (c), (d), and (e) and Grounds 11(b) and (c) meritless. ................. 65

H.    Ground 11(e) is meritless. ................................................................................. 81

I.    Ground 12 is meritless. ..................................................................................... 83

J.    Ground 13 is not cognizable on federal habeas review. ............................................. 83

MOTION FOR EVIDENTIARY HEARING ........................................................................ 85

CERTIFICATE OF APPEALABILITY .............................................................................. 85

CONCLUSION & RECOMMENDATION .......................................................................... 86

OBJECTIONS, REVIEW, AND APPEAL .......................................................................... 87

## INTRODUCTION

Representing himself, Petitioner Deonte Thomas, a prisoner in state custody, filed a petition on January 31, 2022, seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On February 14, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Feb. 14, 2022). On November 10, 2022, Respondent Warden Kenneth Black, as Warden of the Marion Correctional Institution, filed the Return of Writ, including the state-court record and trial transcripts. (*See* ECF #13, 13-1, and 13-2). Mr. Thomas filed a Traverse to the Return of Writ. (ECF #16). Since then, Mr. Thomas has been transferred to the Pickaway Correctional Institution and is currently in the custody of Warden Rochelle Moore (hereinafter, the State). (Non-document entry of Sept. 14, 2023).  Thus, under Fed. R. Civ. P. 25(c) and Rule 2(a) of the Habeas Rules, I substitute her as the proper respondent here.

For the reasons that follow, I recommend the District Court **DISMISS** the petition and **DENY** a certificate of appealability as to all grounds. I also **DENY** the motion for an evidentiary hearing.

## PROCEDURAL HISTORY

### A.  Factual findings of the Court of Appeals

The factual findings of the Ohio Court of Appeals, Sixth Appellate District, made on direct appeal are presumed correct unless Mr. Thomas rebuts that presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1). In its opinion upholding Mr. Thomas's conviction, the Sixth District wrote as follows:

{¶2} On March 25, 2017, police responded to a 911 call at a residence in East Woodside Terrace in Toledo, Ohio. The victim, R.I., told police that Thomas had kicked in her door sometime after 1:00 a.m., assaulted her repeatedly before both fell asleep in her bed, and upon waking around 6:00 a.m., forced her to have sex before agreeing to leave. Police took R.I.'s statement and investigated the scene, and advised R.I. she had within 24 hours of the incident to submit to an examination for purposes of collecting evidence of a sexual assault. The next day, R.I. went to the hospital and a SANE nurse collected evidence of the assault, noting injuries consistent with R.I.'s account of the incident. With the help of family and friends, R.I found places to stay with her children until police could take Thomas into custody.

{¶3} On April 20, 2017, Thomas was arraigned on a four-count indictment, charging aggravated burglary . . ., felonious assault . . ., kidnapping . . ., and rape . . . . Thomas entered a not guilty plea, and after discovery, the parties filed various motions and briefs, arguing the admissibility of evidence. Additionally, the state filed a notice of intent to introduce 404(B) evidence.

{¶4} On August 31, 2017, the trial court addressed the various evidentiary issues at hearing. Of importance in this appeal, the parties disputed whether the trial court should permit evidence of Thomas's prior conduct, pursuant to Evid.R. 404(B) and R.C. 2945.59. The trial court deemed evidence of property damage unrelated to the incident inadmissible, but evidence of physical violence by Thomas against R.I., occurring prior to the date of the incident, was admissible as relevant to the issues of force and consent, as it pertained to the offense of rape.

{¶5} On September 5, 2017, jury trial commenced, with Thomas's counsel filing a motion in limine to exclude R.I.'s statements to the SANE nurse as hearsay the morning of trial. The trial court took the motion under advisement, and ultimately permitted the testimony.

{¶6} In addition to testimony by the SANE nurse, investigators, and R.I.'s family and friends, R.I. herself testified about her relationship with Thomas and about the incident of March 25, 2017. R.I. and Thomas met in the workplace. According to R.I., she and Thomas had an on-again, off-again relationship, but from March 2015 until December 2016, the pair lived together at R.I.'s home with her three children. R.I. described violent episodes during the relationship, including incidents in which Thomas burned her hand, struck her in the cheek with the butt of a pistol, and backhanded her and blackened her eye. R.I. also indicated Thomas tried to strangle her on several occasions. Any resistance she exhibited resulted in a prolonged attack.

4

{¶7} Despite the abuse, R.I. said she loved Thomas, and after each incident, Thomas promised to change. R.I. knew that Thomas also maintained an intimate relationship with another woman, Kayla Smith, and was not happy about the infidelities. R.I. even threatened to make a video of Thomas and Smith having sex "go viral." By December 2016, the living arrangement was no longer working, and Thomas moved out. R.I. and Thomas continued to work together.

{¶8} Thomas and R.I. also continued an intimate relationship after he moved out, with R.I. indicating the two had engaged in consensual sex as recent as March 21, 2017. R.I. testified that the two spent their lunch break that day at her home. On the evening of March 24, 2017, however, R.I. told Thomas she was going to a cookout and bonfire at a friend's house so that she could avoid seeing him. In fact, R.I. was hosting the cookout and bonfire for friends and family at her home, and R.I. posted video of her bonfire to Snapchat. Thomas saw the video, and made numerous attempts to contact R.I. through calls and text messages that went unanswered.

{¶9} The party at R.I.'s house ended after midnight, and R.I. and her brother sat by the fire, waiting for it to die out, until around 1:00 a.m. R.I.'s brother stayed the night, sleeping in her living room along with two of her children, while R.I.'s oldest child had a friend over in the other bedroom for a sleepover. The kitchen and dining room separated R.I.'s bedroom from the rest of the home, and R.I.'s bedroom was accessible from the back door without crossing through the living room. Before retiring for the night, R.I. secured the doors and windows to the home, checking the locks.

{¶10} Shortly after R.I. went to bed, she heard a loud car engine outside the home, loud bangs on the door, and then Thomas appeared in her bedroom. R.I. testified that Thomas was angry, and asked her about a car in the driveway. R.I. told Thomas the car belonged to her brother, who was sleeping in the living room. Thomas took R.I.'s phone and scrolled through her text messages, and after noting texts between R.I. and a male friend, Jessie Garcia, Thomas became upset. When R.I. started crying, Thomas told her to stay quiet or he would kill her.

{¶11} Thomas used R.I.'s phone to call Garcia via her Facebook Messenger account, to show Garcia that R.I. was with him. As Garcia watched, Thomas held R.I. by the throat, and tried to force her to kiss him. When R.I. refused to kiss him, Thomas hung up, and choked R.I. until she lost consciousness. When R.I. revived, Thomas placed a second video call to Garcia, and once more tried to make R.I. kiss him. When R.I. refused, he hung up and choked her unconscious once more. When R.I. revived a second time, Thomas straddled R.I. on her bed and pushed his thumb against her eye, threatening to make her "look like Fetty Wap," referencing a rap musician who is missing an eye. Thomas then removed R.I.'s clothes.

5

{¶12} Thomas dragged R.I. by her hair into the bathroom, connected to her bedroom. With R.I. naked on the bathroom floor, Thomas soaked a hand towel in the sink, got on top of her, and covered her face with the wet towel, shoving it into her mouth as she gasped for breath. This continued until R.I. started choking, and Thomas released R.I. so she could use the toilet to throw up. R.I. vomited blood, and Thomas apologized and left the bathroom. After R.I. finished vomiting and emerged from the bathroom, she attempted to go to the kitchen. Thomas back-handed her in the mouth, splitting her lip and knocking her to the floor. R.I. next remembered being back on the bed, and Thomas asked if they could "make love." R.I. told him no, and they both fell asleep.

{¶13} Thomas and R.I. awoke around 6:00 a.m. Thomas again asked R.I. if they could "make love." After initially refusing, R.I. believed that sex with Thomas was the only way to make the ordeal end. Also, R.I. was still naked, and Thomas was already in position when he asked, so R.I. testified that she "let it happen." Afterwards, Thomas tried to convince R.I. to let him spend the day with her, as he had called off from work. Instead, R.I. convinced Thomas he had to leave, and agreed to drive him to the hospital to get a doctor's excuse for work. As they left the home, R.I. noted the damage to her door frame, as well as the footprint on the door.

{¶14} As R.I. drove, Thomas noted the scratches on her neck and apologized to her, saying it would never happen again and that he wanted to move back home. R.I. ended up dropping Thomas at a nearby McDonald's at his request, and told him he was forgiven and could move back home in order to get him to leave her car. Once R.I. returned home, she exchanged texts with Thomas, asking him about her phone charger, and Thomas texted R.I. about repairing the damage to her door. R.I. then attempted to rest, but was in too much pain to sleep. Around noon, R.I. called her mother, who came over and urged R.I. to call police.

{¶15} The state's witnesses and exhibits corroborated R.I.'s account of events.

{¶16} At the close of the state's case, Thomas moved for dismissal pursuant to Crim.R. 29. The trial court denied the motion, and Thomas presented his case.

{¶17} Thomas called his friend, Alex Zilba, as a witness, who stated he drove Thomas to R.I.'s home the night of the incident and acknowledged his car engine is loud, with no muffler. Zilba testified that he spent the night at R.I.'s house, sleeping on the living room floor, and heard and saw nothing related to any of the charged offenses.

{¶18} R.I.'s brother also testified, indicating he heard nothing that night, and slept through until morning, leaving shortly after he awoke. He also indicated, however, that he noted no damage to the door when he entered R.I.'s home, after the bonfire.

6

{¶19} Additionally, Kayla Smith testified, but had no first-hand knowledge of events in R.I.'s home, with her testimony demonstrating she and R.I. were rivals for Thomas's affections.

{¶20} Thomas testified on his own behalf. He acknowledged taking R.I.'s phone and contacting Garcia via Messenger, but disputed kicking in R.I.'s door or forcing her to have sex. Thomas testified that he divided his time between R.I. and Kayla Smith, staying with R.I. the night before he worked, and returning to Kayla when he had a day off. Thomas contended that revenge motivated R.I.'s accusations, and that she was lying about him to punish him for his infidelities. Thomas also claimed that he continued to live with R.I., and shared expenses with her, disputing testimony that he had moved out in December 2016.

{¶21} After deliberations, the jury returned a guilty verdict on all charges. The trial court referred the matter for a presentence investigation and report, and on September 28, 2017, the court sentenced Thomas to a total prison term of 16 years, of which 8 years is mandatory, and classified him as a Tier III sex offender. It is from this judgment Thomas brings an appeal.

(ECF #13-1 at PageID 305-11; *see also State v. Thomas*, No. L-17-1266, 2019 WL 2157933, at *1-3

(Ohio Ct. App. May 17, 2019)).

## B.     Trial court proceedings

On April 12, 2017, a Lucas County grand jury charged Mr. Thomas with aggravated

burglary in violation of Ohio Revised Code § 2911.11(A)(1), felonious assault in violation of

Revised Code § 2903.11(A)(1), kidnapping in violation of Revised Code § 2905.01(A)(3), and rape

in violation of Revised Code § 2907.02(A)(2). (ECF #13-1 at PageID 148-50). Mr. Thomas was

arraigned on April 20, 2017, pled not guilty, and was appointed counsel. (*Id.* at PageID 151).

Before trial, the State filed a Notice of Intent to Introduce 404(B) Evidence, specifically

evidence of prior acts involving physical abuse towards R.I. and criminal damaging. (ECF #13-1 at

PageID 172-80). The trial court deemed evidence of Mr. Thomas's physical violence against R.I.

admissible as relevant to the issues of force and consent but found evidence of property damage inadmissible. (*See* ECF #13-1 at PageID 189; *see also Thomas*, 2019 WL 2157933 at *1).

Trial began on September 5, 2017. (ECF #13-1 at PageID 193). Following the close of the State's case, the trial court denied Mr. Thomas's Motion for Judgment of Acquittal under Ohio Criminal Rule 29. (*Id.* at PageID 194). Mr. Thomas renewed the motion after the close of the defense case, and the trial court again denied the motion. (*Id.* at PageID 195). On September 8, 2017, the jury found Mr. Thomas guilty of all four counts. (*Id.* at PageID 196).

Mr. Thomas appeared for sentencing on September 28, 2017. (*Id.* at PageID 220-22). The trial court sentenced Mr. Thomas to eight years of imprisonment on each count, ordered Counts 1 and 2 to be served concurrently to each other, and ordered Counts 3 and 4 to be served concurrently to each other, but consecutive to Counts 1 and 2, for an aggregate sentence of 16 years of imprisonment, of which the 8 years under Count 4 is mandatory. (*Id.* at PageID 220).

**C.    Direct appeal**

On October 26, 2017, through new counsel, Mr. Thomas filed a Notice of Appeal with the Sixth District. (ECF #13-1 at PageID 223). He asserted five assignments of error, as follows:

**ASSIGNMENT OF ERROR 1**
The trial court erred to the prejudice of Appellant by denying Appellant's motion to exclude Evid.R. 404(B) prior bad acts.

**ASSIGNMENT OF ERROR 2**
Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 10 of the Constitution of the State of Ohio.

**ASSIGNMENT OF ERROR 3**
Conduct by the trial judge amounted to judicial misconduct in violation of Appellant's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Constitution of the State of Ohio.

**ASSIGNMENT OF ERROR 4**
The trial court erred in denying Appellant's Rule 29 Motion.

**ASSIGNMENT OF ERROR 5**
The jury's verdict was against the manifest weight of the evidence presented at trial.

(*Id.* at PageID 229). After the State filed its brief (*id.* at PageID 266-300), the Sixth District affirmed

the convictions on May 17, 2019. (*Id.* at PageID 304-33; *see also State v. Thomas*, 2019 WL

2157933).

On June 28, 2019, Mr. Thomas, representing himself, filed a Notice of Appeal to the

Supreme Court of Ohio. (*Id.* at PageID 334-35). His Memorandum in Support of Jurisdiction

advanced five propositions of law, each of which were identical to the five assignments of error he

presented to the Sixth District. (*Id.* at PageID 348-62). On August 20, 2019, the Supreme Court of

Ohio declined jurisdiction. (*Id.* at PageID 398; *see also State v. Thomas*, 129 N.E.3d 457 (Ohio

2019) (table)).

**D.      Petition to Vacate or Set Aside Judgment of Conviction or Sentence**

Meanwhile, on February 20, 2019, Mr. Thomas, representing himself, filed a petition for

post-conviction relief in state court, claiming ineffective assistance of trial counsel for failing to

present evidence that he lived with R.I. at the residence. (ECF #13-1 at PageID 675). According to

Mr. Thomas, bills in his name would have proved he lived with R.I. at all relevant times and,

therefore, he could not have been found guilty of aggravated burglary, of which trespass is an

essential element. (*Id.*; *see* Ohio Rev. Code § 2911.11(A)).

On March 7, 2019, Mr. Thomas supplemented his petition with seven additional claims, as

follows:

**CLAIM TWO**
Ineffective assistance of counsel.

**Supporting facts**: There is a sex video with a time stamp and a map of the sex act in question. The time stamp is 7:40 AM on the day of the allegation undermining the State theory I said I was going to call off and that's why [R.I.] had sex with me. It undermines the timeframe of events according to the state and should have been used to impeach [R.I.] because we had sex hours after I called off.

**CLAIM THREE**
Ineffective assistance of counsel.

**Supporting facts**: My attorney failed to get an expert to cross examine so she would be able to effectively cross examine and display evidence to the jury using cellphone records. Evidence that will corroborate my testimony and impeach State witnesses.

**CLAIM FOUR**
Ineffective assistance of counsel, failure to impeach.

**Supporting facts**: There is a report from Detective Langlois that has prior inconsistent statements. It should have been used to impeach [R.I.].

**CLAIM FIVE**
Ineffective assistance of counsel.

**Supporting facts**: Jesse Garcia testified he never had [R.I.'s] number and was dishonest about their prior communication. In my cell phone are screenshots of prior communication from his phone to [R.I.'s] phone on cell records. One for 3 hours. He had also talked to me on prior occasions.

**CLAIM SIX**
Ineffective assistance of counsel.

**Supporting facts**: My phone had messages from [R.I.]. Two weeks prior to this case was our anniversary. After being caught with another woman, she threatened to put me in jail. I responded saying "make some more shit up." This should have been shown to show she has the mindset to be vindictive and the ability to do something like put me in jail on false charges.

**CLAIM SEVEN**
Ineffective assistance of counsel.

**Supporting facts**: [R.I.] testified she had not seen me in days. She was dishonest. There is rideshare info on her account that proves she sent Uber to my dad's house

to pick me up and brought me to the trailer at 6 East Woodside the night before the allegations.

**CLAIM EIGHT**
Ineffective assistance of counsel.

**Supporting facts**: I was not shown any videos in my discovery, except one at trial that was edited, not allowing me to make informed decisions or to effectively assist in my defense. The video I was shown was edited and there is information in the original I can use to assist me that was cut out.

(*Id.* at PageID 683-96) (cleaned up). On February 25, 2020, the trial court determined the post-conviction relief petition was untimely and the claims were barred by the doctrine of res judicata.

(*Id.* at PageID 729-31).

On March 19, 2020, Mr. Thomas appealed the trial court's decision to the Sixth District.

(*Id.* at PageID 733). In his brief, Mr. Thomas raised two assignments of error, as follows:

**ASSIGNMENT OF ERROR 1**
The trial court erred when it determined that Deonte Thomas's postconviction petition was barred by the statute of limitations.

**ASSIGNMENT OF ERROR 2**
The trial court erred by applying the doctrine of res judicata to bar Deonte Thomas's postconviction grounds for relief.

(*Id.* at PageID 736). On February 12, 2021, the Sixth District affirmed the trial court's judgment on res judicata. (*Id.* at PageID 795-805; *see also State v. Thomas*, No. L-20-1063, 2021 WL 529723 (Ohio Ct. App. Feb. 12, 2021)).

On March 26, 2021, Mr. Thomas appealed to the Supreme Court of Ohio and raised two propositions of law, as follows:

**PROPOSITION OF LAW 1**
Res judicata does not bar the consideration of evidence outside the record in a postconviction petition.

11

**PROPOSITION OF LAW 2**
The appellate court applied the wrong standard of review to appellant's ineffective assistance of counsel claim.

(*Id.* at PageID 809). On May 25, 2021, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 832).

**E.    Ohio Appellate Rule 26(B) Application to Reopen Appeal**

On August 13, 2019, Mr. Thomas, representing himself, filed a timely application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. He alleged ineffective assistance of counsel for failing to raise additional assignments of error, as follows:

**ASSIGNMENT OF ERROR 1**
The trial court erred by allowing various testimony of prior bad acts under rule 404(B).

**ASSIGNMENT OF ERROR 2**
Ex parte communication amounted to judicial misconduct.

**ASSIGNMENT OF ERROR 3**
Improper sentencing.

**ASSIGNMENT OF ERROR 4**
Crim. R. 29 Motion/Sufficiency of the Evidence.

**ASSIGNMENT OF ERROR 5**
Ineffective assistance of counsel.

(ECF #13-1 at PageID 399-408). He filed amendments to the application, as follows:

[Mr.] Thomas filed his application on August 13, 2019, asserting five assignments of error, followed by an amended application on September 5, 2019, asserting six assignments of error. In addition, [Mr.] Thomas filed a reply brief, as well as supplemental filings to correct errors in his briefs, add exhibits, and provide additional citations to the trial record. App.R. 26(B)(3) provides for a memorandum of law in opposition, with no provision for a reply brief.

(*Id.* at PageID 604). In his sixth asserted error, Mr. Thomas claimed the jury's verdict was against the manifest weight of the evidence. (*See id.* at PageID 605). On January 31, 2020, the Sixth District denied the application (*id.* at PageID 604-11) and, on November 10, 2020, the court denied Mr. Thomas's motion for reconsideration. (*Id.* at PageID 622-24).

Meanwhile, on March 16, 2020, Mr. Thomas appealed the Sixth District's denial of his application to reopen the direct appeal to the Supreme Court of Ohio. (*Id.* at PageID 625-27). Therein, he asserted eight propositions of law:

**PROPOSITION OF LAW 1**
Appellate court failed to consider new arguments raised in 26(B) application, when 26(B) contained new arguments not previously litigated.

**PROPOSITION OF LAW 2**
Evid.R. 403 provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, and other methods of proof should have been considered in the proper standard of review, per *Old Chief v. United States.*

**PROPOSITION OF LAW 3**
When admitting 404(B) other acts of violence toward the same victim must be completely specific as to time and place; evidence of such prior acts is admissible only when the state makes a properly particularized showing of the specific behavior, its time, and its place.

**PROPOSITION OF LAW 4**
When reviewing the sufficiency of the evidence the record must reflect every element of the offense was met, and appellate court must rely on the record of the trial court, and it is double jeopardy to sentence a defendant to consecutive terms for an allied offense.

**PROPOSITION OF LAW 5**
The trial court is required to make the findings mandated by R.C. 2929.14(C)(4) prior to imposing consecutive sentences at the sentencing hearing and incorporate its findings into its sentencing entry. The trial court must and the record must support the trial courts findings per R.C. 2953.08(G)(2)(a).

13

**PROPOSITION OF LAW 6**
The appellate court must follow the proper standard of review, when considering claims of ineffective assistance and prosecutorial misconduct, and counsel was ineffective for failing to address trial counsel failure to object to various instances of prosecutorial misconduct.

**PROPOSITION OF LAW 7**
Appellate counsel was ineffective for failing to argue violating Rule 609 prejudiced defendant, where evidence of guilt is not overwhelming, and the appellate court erred by applying the wrong standard of review regarding improper impeachment of Alex Zilba.

**PROPOSITION OF LAW 8**
Appellate counsel was ineffective for failing to argue that prejudice resulted due to lack of precise record and violated federal rule 43(a), and the Sixth Amendment right to be present.

(*Id.* at PageID 632-43) (cleaned up, citations omitted). On May 12, 2020, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 673).

**F.     Motion to Correct Illegal or Void Sentence**

On September 28, 2021, Mr. Thomas, representing himself, filed a post-conviction Motion to Correct Illegal or Void Sentence in the trial court, in which he claimed the trial court failed to make required findings under Revised Code § 2929.14(C) prior to imposing consecutive sentences. (ECF #13-1 at PageID 833-35). On February 28, 2022, the trial court determined it unquestioningly made the required findings under § 2929.14(C) at the sentencing hearing, but those findings were not included in the court's sentencing entry filed in September 2017. (*Id.* at PageID 855-56). Noting that Mr. Thomas first raised this issue four years after the trial court pronounced the sentence, it determined as follows:

> Recent Supreme Court case precedent states with clarity that any challenge to an alleged deficiency in the trial court's sentencing entry must have been raised either before the sentencing court or raised as part of the defendant's right to appeal his convictions. Defendant Thomas failed to do so in either venue.

(*Id.* at PageID 860). Mr. Thomas did not appeal this decision.

## FEDERAL HABEAS PETITION

On January 31, 2022, Mr. Thomas filed his habeas petition (ECF #1), raising fourteen grounds for relief,[1] as follows:

**GROUND 1**: Trial court violated petitioner's right to the due process clause according to the 14th Amendment rights to the United States Constitution, by admitting evidence of prior bad acts under Rule 404(B).

**Supporting Facts**: The trial court allowed unsubstantiated allegations of prior acts [of] [Mr.] Thomas assaulting R.I., but the prior acts were not shown to be factually or temporally related to the crimes.

**GROUND 2**: Appellate counsel was ineffective for failing to raise different arguments regarding the admission of 404(B) evidence; and failure to adhere to Evid. R. 403 violating his right to effective assistance, and an impartial jury, and due process under the 6th and 14th Amendments of the United States Constitution.

**Supporting Facts**: Mr. Thomas raises four sub-claims to Ground 2. Appellate counsel should have raised different arguments, including (a) the trial court erred in refusing to consider other methods of proof; (b) the trial court admitted unsubstantiated allegations of prior bad acts without substantial proof that the acts occurred; (c) appellate counsel was ineffective for failing to show why a limiting instruction regarding the purpose for which the jury could consider the prior bad acts was ineffective and highly prejudicial; and (d) the trial court failed to adhere to the balancing analysis of Evid. R. 403.

**GROUND 3**: The trial judge's misconduct violated petitioner's 6th and 14th Amendment rights to a fair trial, effective assistance of the United States Constitution.

**Supporting facts**: The trial judge violated his right to a fair trial by having direct contact with the jury outside the presence of petitioner and his counsel. There is no record of the conversation, and the presumption of prejudice cannot be overcome.

**GROUND 4**: Appellate counsel was ineffective for failing to raise meritorious arguments regarding trial judge's misconduct violated petitioner's 6th and 14th Amendment rights to a fair trial, effective assistance of the United States Constitution.

---

[1]        The petition does not contain a Ground 7.

**Supporting facts**: Appellate counsel failed to argue that petitioner was prejudiced by the trial judge's conversation with the jury because the judge thwarted appellate review and prejudice is presumed.

**GROUND 5**: Appellate counsel was ineffective for failing to argue the failure to adhere to O.R.C. 2929.14(C) deprived the defendant of his 5th, 6th, and 14th Amendment rights to equal protection, effective assistance, and due process guaranteed by the United States Constitution.

**Supporting facts**: (a) appellate counsel failed to raise the issue that the sentence is contrary to law because the trial court did not make the required findings under § 2929.14(C) before imposing consecutive sentences; and (b) the 16-year sentence grossly misrepresents the facts before the jury because there were no serious injuries sustained, the victim testified she did not consider his actions "rape," the allegations stem from an isolated incident, and the petitioner is a first-time offender.

**GROUND 6**: Appellate counsel ineffective for failing to raise the following arguments regarding Crim. R. 29 motion sufficiency of the evidence violating his right to effective assistance and due process per the 6th and 14th Amendments of the United States Constitution.

**Supporting facts**: Appellate counsel should have argued that the State did not prove the elements of (a) Kidnapping; and (b) Rape.

**GROUND 8**: Trial court erred to the prejudice of Appellant's 6th and 14th Amendment rights under the United States Constitution to due process when it allowed the conviction to stand by failing to grant the Crim. R. 29 motion to dismiss.

**Supporting facts**: The State failed to prove the necessary elements to sustain convictions for (a) aggravated burglary; (b) felonious assault; (c) kidnapping; and (d) rape.

**GROUND 9**: Appellate counsel ineffective for failing to raise the following arguments regarding allied offenses, violating his right to effective assistance, double jeopardy, and due process under the 5th, 6th, and 14th Amendments of the United States Constitution.

**Supporting facts**: appellate counsel was ineffective and should have raised the following arguments: (a) all charges are allied offenses of similar import, there was little to no harm caused, and the charges stem from the same night with the same victim and same conduct; (b) the kidnapping charge should be run concurrent; (c) all charges should be run concurrent; and (d) the State lied in its opening statement and never proved their case.

**GROUND 10**: Appellate counsel ineffective for failing to raise the following ineffective assistance of counsel arguments, violating the 6th and 14th Amendments of the United States Constitution and unreasonably applied *Strickland*.

**Supporting facts**: Appellate counsel was ineffective for failing to argue that he was prejudiced by trial counsel's errors in (a) failing to obtain an expert to verify and investigate the AT&T phone records introduced at trial; and (b) failing to object to the improper impeachment of Alex Zilba, a defense witness. Appellate counsel was also ineffective for failing to argue that trial counsel was ineffective for (c) failing to object to the State's improper questioning of the defendant; (d) failing to object to the State's improper questioning of witnesses and vouching for witness credibility; (e) failing to object to the prosecutor's statements "injecting themselves or opinions into the jury"; (f) failing to use medical records to impeach the State's witnesses; and (g) failing to object to prosecutorial misconduct for knowingly lying to the jury in its opening statement.

**GROUND 11**: Counsel was ineffective violating the 6th and 14th Amendments the United States Constitution and unreasonably applied *Strickland*.

**Supporting facts**: Counsel was ineffective for (a) failing to obtain evidence of bills in petitioner's name to prove Mr. Thomas lived at the residence and could not have trespassed; (b) failing to obtain an expert to authenticate and verify phone records from AT&T cell phones; (c) failing to properly investigate and impeach using phone records; (d) failing to use exculpatory evidence in R.I.'s medical records to impeach witnesses; (e) failing to present evidence of a cell phone video showing consensual sex between R.I. and the petitioner; and (f) failing to present screenshots from petitioner's cell phone showing that one of the witnesses lied about not having R.I.'s phone number before the night in question.

**GROUND 12**: Counsel was ineffective violating the 6th and 14th Amendments to the United States Constitution by failing to raise the ground that cumulative errors violated due process clause of the United States Constitution.

**Supporting facts**: Cumulative errors at trial deprived the defendant of a fair trial. The errors listed are too profound to be able to guess what would have happened absent the errors, and as a result an innocent man has been convicted, and a new trial should be granted.

**GROUND 13**: Denial of postconviction petition unreasonable or unconscionable in light of determination of facts.

**Supporting facts**: Petitioner's postconviction petition should not have been denied on the basis of res judicata because all claims assert evidence off of the record,

17

including bills showing residence, the video showing consensual sex, cell phone records, and the 911 tape.

**GROUND 14**: Ineffective assistance of counsel for failing to present evidence to impeach Jesse Garcia.

**GROUND 15**: Ineffective assistance of counsel for failing to investigate, present evidence, and impeach Detective Langlois for lying in his police report to obtain an indictment.

(ECF #1 at PageID 16-39) (cleaned up, citations omitted).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Thomas's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore it acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For the purposes of § 2254(d)(1), clearly established

federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

19

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444

F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661

22

(N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more

likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review**. The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, merely asserting that a state-law error violates the federal constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S.

25

74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

## ANALYSIS

The State argues Mr. Thomas procedurally defaulted Ground 9(d), Ground 10(f) and (g), Ground 11(a), (d), and (f), Ground 14 (representing a duplicate of Ground 11(f)), and Ground 15. (ECF #13 at PageID 87). The State further asserts the remaining grounds for relief are not cognizable as purely state-law claims or are otherwise meritless. (*Id.* at PageID 97-137). For ease of analysis, I provide the following chart summarizing Mr. Thomas's claims and subclaims.

| Ground for Relief | Claim | Subclaim(s) |
|---|---|---|
| **Ground 2** | IAAC—did not argue four errors on appeal regarding the admission of prior-bad-acts evidence: | (a) The trial court did not consider other methods of proof<br>(b) The trial court admitted evidence without substantial proof<br>(c) The limiting instruction was not effective<br>(d) The trial court's balancing analysis under Ohio Evidence Rule 403 was erroneous |
| **Ground 5** | IAAC—did not raise two sentencing errors on appeal: | (a) The trial court did not make the required findings for consecutive sentences<br>(b) The factors do not support the length of the sentence |
| **Ground 9** | IAAC—did not raise four sentencing errors on appeal: | (a) The offenses were allied offenses of similar import<br>(b) The trial court erred in imposing a consecutive sentence for kidnapping<br>(c) The trial court erred in not imposing concurrent sentences for all convictions<br>(d) prosecutorial misconduct in opening statement |

| Ground for Relief | Claim | Subclaim(s) |
|---|---|---|
| **Ground 10** | IAAC–did not raise on appeal IAC for seven errors by trial counsel: | (a) failing to investigate AT&T phone records<br>(b) failing to object to State's improper impeachment of Alex Zilba<br>(c) failing to object to State's improper cross-examination<br>(d) failing to object to State vouching for witness<br>(e) failing to object to State's insertion of own opinions to the jury<br>(f) failing to impeach State witnesses using medical records<br>(g) failing to object to prosecutorial misconduct opening statement |
| **Ground 11** | Standalone IAC claims for six errors by trial counsel: | (a) failing to obtain evidence of residence<br>(b) failing to authenticate AT&T phone records<br>(c) failing to investigate and impeach using phone records<br>(d) failing to impeach victim with medical records<br>(e) failing to present cell phone video<br>(f) failing to impeach witness with cellphone screenshots |

*N.B.: IAC refers to ineffective assistance of trial counsel; IAAC refers to ineffective assistance of appellate counsel.*

## I.  Procedural Default

### A.  Ground 5(a), Ground 9(d), Ground 10(f) and 10(g), Ground 11(d), and Ground 15 are procedurally defaulted as they were not fairly presented in the state courts.

Five of Mr. Thomas's claims are procedurally defaulted because he did not properly raise them in the state courts. First, in Ground 5(a), Mr. Thomas claimed his appellate counsel was ineffective for failing to raise as error the trial court's alleged failure to make the required findings under Revised Code § 2929.14(C) before imposing consecutive sentences. (ECF #1 at PageID 21). Although Mr. Thomas raised an independent sentencing claim alleging the trial court failed to make the required findings under § 2929.14(C) in his September 2021 Motion to Correct Illegal

or Void Sentence (ECF #13-1 at PageID 833-35), he did not raise it as an ineffective-assistance-of-appellate-counsel claim. Thus, it is procedurally defaulted.

Second, in Ground 9(d), Mr. Thomas alleges his appellate counsel was ineffective for failing to assert the State lied in its opening statement and never proved its case. (ECF #1 at PageID 27-28). Third, in Ground 10(g), Mr. Thomas claims his appellate counsel was ineffective for failing to assert ineffective assistance of trial counsel for not objecting when the State purportedly lied in its opening statement to the jury. (*Id.* at PageID 32). Fourth, in Ground 11(d), Mr. Thomas asserts his trial counsel was ineffective in failing to use R.I.'s medical records to impeach R.I. and the SANE nurse. (*Id.* at PageID 34). Fifth, in Ground 15, Mr. Thomas claims his trial counsel should have investigated, presented evidence, and impeached Detective Langlois for allegedly lying in his police report to obtain an indictment. (*Id.* at PageID 39). According to Mr. Thomas, Detective Langlois lied in his report when he stated R.I. claimed Mr. Thomas "pried her legs apart and forced his penis into her vagina while she screamed no." (*Id.*). Mr. Thomas did not raise any of these arguments in his direct appeal, in his motion for post-conviction relief, or in his application to reopen the direct appeal under Ohio App. R. 26(B). Thus, they are procedurally defaulted.

Next, Ground 10(f) is procedurally defaulted because Mr. Thomas abandoned it. His argument is that his appellate counsel was ineffective for not raising as error his trial counsel's failure to impeach R.I. and the SANE nurse using R.I.'s medical records. (ECF #1 at PageID 32). He first raised this claim to the Sixth District in his application to reopen the direct appeal. (ECF #13-1 at PageID 553). When Mr. Thomas appealed to the Supreme Court of Ohio the Sixth District's denial of the application to reopen, he failed to bring this particular argument to the

court's attention, thereby abandoning it. Although Mr. Thomas asserted his trial counsel's failure to impeach other witnesses in Ground 15, Ground 15 was not presented to any state court. As such, he failed to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal court" by "invoking one complete round of the state's established appellate review process." *O'Sullivan,* 526 U.S. at 845.

These bases for relief are procedurally defaulted, precluding federal habeas review on the merits unless Mr. Thomas can overcome the default by showing cause and prejudice or by showing he qualifies under the actual innocence exception. I discuss this question in Section C, below.

### B.  Grounds 11(a) and 11(f) and Ground 14 are procedurally defaulted due to Mr. Thomas's failure to comply with a state procedural rule.

Three additional claims of Mr. Thomas are procedurally defaulted because he failed to comply with a state procedural rule that is an adequate and independent state-law ground on which the state can foreclose review of federal constitutional claims and the state court enforced that procedural rule. *Maupin,* 785 F.2d at 138; *see Williams,* 460 F.3d at 806 (procedural default occurs if a petitioner fails to comply with state procedural rules in presenting his claim to the appropriate state courts).

In Ohio, the doctrine of res judicata, a procedural rule, prevents a defendant from bringing claims in a post-conviction action that were raised or could have been raised on direct appeal. *See State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967). The Sixth Circuit has long held that application of Ohio's doctrine of res judicata in such circumstances is an adequate and independent state-law ground on which the state courts can preclude review of federal constitutional claims. *Williams v. Bagley,* 380 F.3d 932, 967 (6th Cir. 2004).

Mr. Thomas raised Ground 11(a) regarding counsel's failure to obtain and present household bills in his name to establish residence with the victim and (f) regarding counsel's failure to present evidence to impeach Jesse Garcia for the first time in his petition for post-conviction relief. The trial court determined the doctrine of res judicata barred his claims from consideration because Mr. Thomas could have raised them in the direct appeal. (ECF #13-1 at PageID 730). The Sixth District affirmed the trial court's decision on res-judicata grounds. (*Id.* at PageID 795-805; *see also State v. Thomas,* 2021 WL 529723, at *2-4).

According to Mr. Thomas, Grounds 11(a) and (f) and Ground 15 are not independent claims, but additional facts supporting already exhausted claims. (ECF #16 at PageID 1741). Citing *Picard v. Connor,* 404 U.S. 270 (1971), Mr. Thomas states "if the substance of a federal habeas corpus claim was first presented to the state courts, despite variations in the factual allegations urged in its support, the claim is exhausted." (*Id.*). Although the presentation of additional facts to the district court does not evade the exhaustion requirement, it does so only if the supplemental evidence does not fundamentally alter the legal claim already considered by the state courts. *Vasquez v. Hillery,* 474 U.S. 254, 257-58 (1986). In the specific context of ineffective-assistance-of-counsel claims, as here, "to the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts." *Caver v. Straub,* 349 F.3d 340, 346-47 (6th Cir. 2003). Grounds 11(a) and (f) and Ground 15 raise ineffective-assistance-of-counsel claims each based on different allegedly ineffective actions than the claims raised on direct appeal. Thus, they are separate claims rather than additional facts purportedly supporting previously exhausted claims. Because these claims are barred by Ohio's doctrine of res judicata, they are procedurally defaulted.

Mr. Thomas next argues the state courts misapplied res judicata because the claims raised in the petition for post-conviction relief were supported by evidence outside the record. (ECF #16 at PageID 1747-48, 1751). District courts will typically not disturb an Ohio state court's application of its own laws because district courts treat state-court interpretations of state law with deference. *See Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984) ("[S]tate courts are the final authority on state law."). The Sixth Circuit has declined to find issues procedurally defaulted when an Ohio court's application of res judicata was "misplaced," *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), because the adequacy of a state procedural bar is a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). But, as the Sixth Circuit recently noted, the holding in *Greer* has only been applied to cases involving a state court's failure to consider evidence outside the record or other similar factual errors with the state court's decision. *See, e.g.*, *Avery v. Wainwright*, No. 20-3530, 2022 WL 1498431, at *8 (6th Cir. 2022); *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (holding ineffective-assistance-of-counsel claim was not procedurally defaulted because such claims are not barred by res judicata under Ohio law when evidence outside the direct appeal record is presented); *Post v. Bradshaw*, 621 F.3d 406, 423 (6th Cir. 2010) (Ohio state court misapplied its own res judicata rules when petitioner could not have brought post-conviction proceedings as to his claim because the supporting evidence was then-undiscovered).

In determining whether res judicata applies to a constitutional claim, the inquiry is properly focused on whether the claim genuinely relies on the evidence that was not a matter of record. *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982). As such, non-record evidence submitted during post-conviction proceedings to support a constitutional claim cannot be cumulative of, or alternative to, the evidence of record; rather, that evidence must materially support the claim in a

manner that no record evidence could. *See State v. Powell,* 629 N.E.2d 13, 19 (Ohio Ct. App. 1993) (holding that additional evidence offered in post-conviction proceedings to support claim of trial counsel ineffectiveness during mitigation was merely cumulative to the evidence in the original record). The evidence must demonstrate the petitioner could not have appealed the constitutional claim based upon information in the original record. *State v. Combs,* 652 N.E.2d 205, 209 (Ohio Ct. App. 1994). The evidence that was available to the petitioner at the time of the direct appeal is not outside the record simply because it was not raised at the time. *Brinkley v. Houk,* 866 F.Supp.2d 747, 778 (N.D. Ohio Dec. 5, 2011) (citing Ohio law). Nor could evidence be in existence and available for use at the time of trial. *Id.* Ohio courts have further limited the evidence-outside-the-record exception as follows:

> Evidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the [res judicata rule] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery . . . .

*State v. Lawson,* 659 N.E.2d 362, 367 (Ohio 1995) (internal quotations and citations omitted).

Here, Mr. Thomas asserts the claims he raised for the first time in his post-conviction petition are supported by evidence not in the record and thus are not barred by res judicata. As to Ground 11(a), Mr. Thomas asserts the March 2017 television and cable bills in his name, which were not presented in the trial court, prove he did not move out of the residence he shared with R.I. (ECF # 16 at PageID 1747-48). According to Mr. Thomas, had trial counsel presented these bills at trial, the jury would have found him not guilty of aggravated burglary because the State could not prove he relinquished his possessory interest in the residence such that his presence constituted trespass, a required element of the charge. (*Id.* at PageID 1748). At trial, R.I. testified

Mr. Thomas moved out of the home in December 2016, but they maintained a sexual relationship and Mr. Thomas would spend the night sometimes. (ECF #13-2 at PageID 1335, 1341). Defense counsel elicited testimony from Mr. Thomas that "[e]ven after [he] moved out [he] was paying rent" and "had bills in [his] name in the house." (ECF #13-2 at PageID 1530-31). On cross-examination, Mr. Thomas admitted he did not bring any physical documentation of the bills in his name but that he was sharing bills and rent with R.I. (*Id.* at PageID 1540). When asked if he lived at the residence on March 24 or 25, 2017, Mr. Thomas stated "I wouldn't use the term lived there like every day, but I stayed there frequently." (*Id.* at PageID 1539).

The Sixth District determined the additional evidence of bills in Mr. Thomas's name failed to demonstrate the outcome of the case would have been different so as to avoid application of res judicata; in other words, Mr. Thomas failed to demonstrate prejudice under the standard for ineffective assistance of counsel. (*See* ECF #13-1 at PageID 803; *Thomas,* 2021 WL 529723, at *4). Moreover, physical documentation of bills in Mr. Thomas's name appears to be cumulative of his own testimony that bills associated with the residence were in his name and, by his own admission, the evidence was in existence at the time of the trial.

Regarding Ground 11(f), and the duplicative Ground 14, Mr. Thomas asserts that counsel failed to impeach Jesse Garcia's statement that he did not have R.I.'s phone number by presenting screenshots in Mr. Thomas's phone purportedly showing that Mr. Garcia and R.I. had a 3-hour telephone conversation sometime before March 24, 2017. (ECF #16 at PageID 1751). Mr. Thomas raised this claim in his petition for post-conviction relief but did not attach any evidence in support. (*See* ECF #13-1 at PageID 715). According to Mr. Thomas, the screenshot proves Mr. Garcia was dishonest and, therefore, biased against him. (*Id.*). On cross-examination, Mr. Garcia

testified he did not have R.I.'s phone number on March 24 and was in contact with her through Facebook's messenger and video chat applications. (ECF #13-2 at PageID 1298). On the other hand, R.I. testified on cross-examination that she and Mr. Garcia communicated through Facebook and text messages on March 24 and 25. (*Id.* at PageID 1419). Defense counsel, through cross-examination of R.I., discredited the accuracy of Mr. Garcia's testimony that he did not have R.I.'s telephone number, rendering the screenshots cumulative to Mr. Thomas's intended point.

Because Mr. Thomas has not demonstrated that Grounds 11(a) and (f) and Ground 14 are based on noncumulative evidence that is outside the trial record, I defer to the state court's interpretation of state law applying res judicata. Hence, these bases for relief are also procedurally defaulted unless excused.

### C. Mr. Thomas has not established cause and prejudice or actual innocence to excuse the procedural default of his claims.

Mr. Thomas may overcome the procedural bar to these bases for relief if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Here, Mr. Thomas claims he intended to raise the procedurally defaulted claims to the Supreme Court of Ohio in his appeal from the Sixth District's decision denying his application to reopen the direct appeal, but an executive order and subsequent pandemic-related restrictions at the jail, including lockdowns and no access to the legal library, prevented his access to the courts. (ECF #16 at PageID 1743). He argues "it is not [his] fault the state created the executive order, told him all deadlines were extended until after the order, then refused him the ability to correct or amend his petition when he still had time." (*Id.* at PageID 1744). This excuse fails to establish cause sufficient to overcome procedural default.

The deadline for Mr. Thomas to file his notice of appeal and memorandum in support of jurisdiction in the Supreme Court of Ohio expired 45 days after the Sixth District announced its decision denying the application to reopen the direct appeal. Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a). In this case, Mr. Thomas was required to file on or before March 16, 2020, which he did. (ECF #13-1 at PageID 625-44). He now claims the memorandum in support of jurisdiction filed on March 16 was simply a "rough draft" of his claims and that he intended to amend the memorandum to include additional claims while he still had time to do so but he was prevented by the pandemic-related Executive Order and lockdown at the jail. (ECF #16 at PageID 1746).

According to the Rules of Practice of the Supreme Court of Ohio, a party may correct or make additions to previously filed documents, but the revised document must be filed within the time permitted for filing the original document, *i.e.*, within 45 days of the appellate court's decision. Ohio Sup. Ct. Prac. R. 3.13(B)(1). If the revised document is not filed within the time permitted to file the original document, a party may file a motion for leave to file the revised document, but the revised document must be attached to the motion for leave. *Id.* at 3.13(B)(3). The Clerk of the Supreme Court of Ohio is directed to refuse to file a motion for leave that is not accompanied by the revised document. *Id.* Mr. Thomas submitted the self-described "rough draft" of the memorandum in support of jurisdiction on March 16, 2020, the last day before the window to appeal to the Supreme Court of Ohio closed. As dictated by the Supreme Court of Ohio's Rules of Practice, March 16, 2020 was also the deadline by which Mr. Thomas must file any revised memorandum. The Clerk received Mr. Thomas's "Motion to Correct or Amend" on May 28, 2020. (ECF #16 at PageID 1956-59). The Clerk did not file it, presumably because Mr.

Thomas's motion was 73 days late and he did not attach his revised memorandum to the motion for leave.

On March 9, 2020, the Governor of Ohio issued Executive Order 2021-01D and declared a state of emergency in response to COVID-19. *See In Re Application of Rules of Practice of the Supreme Court of Ohio,* 142 N.E.3d 706 (Ohio 2020) (table). On March 27, 2020, the Supreme Court of Ohio issued "Tolling of Time Requirements Imposed by Rules Promulgated by the Supreme Court and Use of Technology," an order that immediately tolled all time requirements imposed by the rules set to expire between March 9, 2020, and the sooner of the expiration of the executive order or July 30, 2020. *Id.* On April 14, 2020, the Supreme Court of Ohio issued an order superseding the March 27, 2020 order. *Id.* In pertinent part, that order states that "any document that was filed between March 9, 2020, and April 21, 2020, and for which a time requirement had expired during that time period is deemed properly filed." *Id.*

Mr. Thomas's March 16, 2020 memorandum was properly filed and was not subject to any extended deadlines. As such, he did not have time remaining to file a revised memorandum in support of jurisdiction and should have pursued his intended claims in the original memorandum. A habeas petitioner's ignorance of the law and procedural requirements for filing a timely notice of appeal with the Supreme Court of Ohio is insufficient to establish cause to excuse the procedural default of claims he intended to but did not raise in the original memorandum. *See Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004).

In addition, Mr. Thomas has not supplemented his claims with new reliable evidence not presented at trial showing actual innocence to demonstrate a fundamental miscarriage of justice, which would permit review of his defaulted claims even though cause and prejudice has not been

established. *Murray*, 477 U.S. at 495-96; *Schlup*, 513 U.S. at 327. A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. To pass through the actual-innocence gateway to permit review of defaulted claims, the habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 327. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* The standard requires the reviewing district court to consider the old and new evidence together and make a probabilistic determination about what reasonable, properly instructed jurors would do. *Id.* at 330. In cases where newly presented evidence calls into question the credibility of witnesses at trial, the habeas court may have to make some credibility assessments. *Id.*

I now consider this new evidence in conjunction with the old. Mr. Thomas submits that the bills in his name, R.I.'s medical records, and phone records prove his actual innocence. (ECF #16 at PageID 1754-58). Discussed above, Mr. Thomas testified at trial that he paid bills associated with the residence and those bills were in his name. He argues the bills undermine R.I.'s credibility and prove he "had a right to his home," thereby establishing that he could not commit aggravated burglary because persons cannot trespass in their own residence. Described above, the testimony at trial established the following:

- R.I. testified Mr. Thomas moved out of the home in December 2016, but they maintained a sexual relationship and Mr. Thomas would spend the night sometimes. (ECF #13-2 at PageID 1335, 1341).

37

- Defense counsel elicited testimony from Mr. Thomas that "[e]ven after [he] moved out [he] was paying rent," and "had bills in [his] name in the house." (ECF #13-2 at PageID 1530-31).

- On cross-examination, Mr. Thomas admitted he did not bring any physical documentation of the bills in his name but that he was sharing bills and rent with R.I. (*Id.* at PageID 1540).

- When asked if he lived at the residence on March 24 or 25, 2017, Mr. Thomas stated "I wouldn't use the term lived there like every day, but I stayed there frequently." (*Id.* at PageID 1539).

Even with physical documentation of bills in his name at the residence, this evidence has little probative force; rather, it merely serves to confirm Mr. Thomas's testimony that he was sharing bills and rent with R.I. The evidence does not undermine R.I.'s or his own testimony that he moved out of the residence but stayed overnight. The bills are cumulative of evidence presented to the jury at the trial and insufficient to show actual innocence. *See, e.g., Souter v. Jones,* 395 F.3d 577, 595 (6th Cir. 2005); *Howard v. Wolfe,* 199 F.App'x 529, 534 (6th Cir. 2006); *Allen v. Harry,* 497 F.App'x 473, 480 (6th Cir. 2012); *Stein v. Eberlin,* No. 1:07-CV-3696, 2009 WL 650363, at *4 (N.D. Ohio Mar. 10, 2009) ("The evidence Petitioner portrays as new is merely cumulative of evidence presented at trial and is insufficient to meet the actual innocence standard.").

Next, Mr. Thomas presents certain medical records as new evidence establishing that R.I. and the SANE nurse who examined R.I. lied about R.I.'s injuries. (ECF #16 at PageID 1758) ("R.I. had full range of motion, and nothing wrong with the muscles, or skeleton, and no pain[,] as she later claimed. Same with eyes, lip, neck."). These medical records, however, were admitted into evidence and referenced by defense counsel to make the very same argument Mr. Thomas advances here. In closing argument, defense counsel stated as follows:

Her injuries are limited to scratches and small bruises, both of them supposedly from this event. But are those the kind of injuries that you would have expected from someone reporting this kind of assault, and from someone of Deonte's size?

So look at Exhibit C. [R.I.'s] eyes don't look swollen or bloodshot. Her face doesn't look like she was smacked so hard she fell to the ground. Her eye doesn't look so swollen that she couldn't open her eye as she testified. This photo was taken with the others when the officer came to the house. It's the closest to the event.

Look at Exhibit 1. Does her lip look swollen to you? This photo, too, taken at that same time, closest to the event. Look at the medical records that were admitted into the evidence. Starting on page 1, patient denies being beat or punched by her assailant. Read page 2, HENT, negative for ear pain and sore throat. Bottom of page 2, trachea normal, normal range of motion and full passive range of motion without pain, neck supple.

(ECF #13-2 at PageID 1639). Because the medical records were admitted into evidence at trial, they cannot be considered "new reliable evidence not previously presented at trial." *See Schlup*, 513 U.S. at 324.

Last, Mr. Thomas asserts he has a screenshot showing Jesse Garcia and R.I. had a three-hour telephone conversation sometime before the offense date, proving that Mr. Garcia lied when he testified to not having R.I.'s phone number at that time. (ECF #16 at PageID 1885). Setting aside the question of whether this exculpates Mr. Thomas, he has not presented any evidence of the alleged screenshot. I conclude Mr. Thomas has not supplemented his claims with new reliable evidence not presented at trial showing actual innocence to excuse the procedural default.

Although ineffective assistance of counsel can serve as cause to excuse a petitioner's procedural default, the ineffective-assistance claim must be presented to the state courts as an independent claim and must not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Because Mr. Thomas procedurally defaulted his ineffective-assistance claim

(Ground 10(f)), that claim cannot serve as cause to excuse procedural default of his other defaulted ineffective-assistance claim (Ground 11(d)).

I therefore recommend the District Court dismiss Ground 5(a), Ground 9(d), Grounds 10(f) and (g), Grounds 11(a), (d), and (f), Ground 14, and Ground 15 as procedurally defaulted and not otherwise excused.

## II. Cognizability and Merits

### A. Ground 1 is not cognizable on federal habeas review and meritless.

In Ground 1, Mr. Thomas alleges state-law and federal constitutional errors. He claims the trial court's decision to admit "unduly prejudicial" evidence of his prior bad acts under Ohio Evidence Rule 404(B) was wrong and rendered his entire trial fundamentally unfair such that it violated his right to due process. (ECF #1 at PageID 16, ECF #16 at PageID 1759-60).

First, there is no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence in the form of other-bad-acts evidence. *See Estelle,* 502 U.S. at 75 (declining to hold admission of prior-injury evidence violated due process). The Supreme Court has addressed whether prior-acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172 (1997), but it has not explicitly addressed the issue in *constitutional* terms.

Second, generally, "errors in the application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983). A state court's evidentiary ruling may violate due process, and thus warrant habeas relief, only when the ruling is so egregious that it results in a denial of fundamental fairness. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). It bears repeating that

"a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review." *Bradshaw,* 546 U.S. at 76 (citing *Estelle,* 502 U.S. at 67-68). Both the Supreme Court and the Sixth Circuit have repeatedly held that a habeas petitioner is not denied a fair trial by the admission of prior-bad-acts evidence that is relevant in the defendant's trial. *Estelle,* 502 U.S. at 69-70; *Coleman v. Mitchell,* 268 F.3d 417, 439-40 (6th Cir. 2001).

Here, the Sixth District addressed Mr. Thomas's evidentiary challenge in terms of state law and determined as follows:

> {¶24} Thomas first challenges the trial court's admission of evidence of prior conduct, arguing the state introduced such evidence solely to show Thomas acted in conformity with the crimes charged. Thomas maintains that the testimony regarding prior conduct lacked corroboration, and was factually and temporally unrelated to the conduct on trial.

> {¶25} Evidence of other acts or crimes is not admissible to prove "a defendant's character as to criminal propensity." Such evidence, however, is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "The language of Evid.R. 404(B) indicates that the list of purposes for which evidence of other crimes, wrongs, or acts may be admitted is not an exhaustive listing."

> {¶26} In considering the admissibility of 404(B) evidence, a court must consider whether the evidence is relevant, whether it is offered for a legitimate purpose, and whether the probative value substantially outweighs the danger of unfair prejudice. We review a decision to permit 404(B) evidence under an abuse of discretion standard. To find an abuse of discretion, we must find more than an error of law or judgment, and that the admission of other-acts evidence was "unreasonable, arbitrary or unconscionable."

> {¶27} At trial, the court precluded some of the intended other-acts testimony as unrelated to the crimes charged, but permitted testimony regarding Thomas's prior acts of domestic violence against R.I. At trial, R.I. and others testified regarding past incidents of physical abuse and injury, including a burn to R.I.'s hand with a hot knife, a head injury resulting from a strike with a pistol butt, and a black eye. R.I. also testified that Thomas choked her on numerous occasions, sometimes until she lost consciousness, with her attempts to resist only prolonging the abuse. On the date

at issue, R.I. testified that she did not want to have sex with Thomas, but knew that he would stay and persist until she gave in, and she wanted the abuse to end and for Thomas to leave.

{¶28} This testimony was relevant, because it provided context for the rape and tended to explain R.I.'s lack of resistance by demonstrating Thomas's use of physical abuse, past and present, to force her compliance. "It is a well-known rule that, while consent negatives rape, where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape, even though the victim might have used greater physical resistance or cried out, when it is shown that her will was overcome by the fear or duress."

{¶29} Based on this relevance, the trial court correctly permitted this evidence for a legitimate purpose, and not merely to impugn Thomas's character. The other-acts evidence admitted by the trial court, furthermore, did not pertain to incidents so remote in time and circumstance to render that testimony irrelevant to the intended purpose. "While other acts evidence may be admissible, its probative value becomes attenuated as the distance in time and the nature of the act become more remote." In this case, the evidence pertained to similar conduct toward R.I. during the course of their relationship, and therefore was neither remote nor attenuated.

{¶30} Finally, the other-acts evidence was not unduly prejudicial. All evidence that tended to prove the state's case was prejudicial to Thomas, but exclusion was only required for evidence that was unfairly prejudicial. "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." Therefore, if the danger of unfair prejudice outweighed the probative value of other-acts evidence, the trial court should have ruled that evidence inadmissible.

{¶31} Here, Thomas argues that evidence of prior conduct was unduly prejudicial, without addressing either the relevance of this evidence or the purpose for which the state proffered the evidence. The trial court gave limiting instructions to the jury following testimony, and again at the close of the state's case in chief as follows:

> Now that [other-acts] evidence was received for a very limited purpose, it was not received and you may not consider it to prove the character of the [Thomas] in order to show that he acted in conformity with that character. If you find that the evidence of other wrongs is true and that [Thomas] committed them, you may consider that evidence only for the purpose of deciding whether it proves that [R.I.'s] will was overcome by fear and may explain her lack of resistance to the sexual assault.
>
> Therefore, evidence that may or may not be relevant regarding the element of force, that's an essential element of the charge of Rape that you will have

42

further instructions on when we get to that point in the trial. So that evidence can not be considered by you for any other purpose.

{¶32} Thomas dismisses the trial court's limiting instruction as ineffective, with no argument or authority offered in support of this conclusion. Contrary to Thomas's position, the trial court properly gave a limiting instruction, and "[i]t is presumed that the jury followed the instructions of the court."

{¶33} Considering the record, the trial court properly considered the relevance of proffered evidence, as well as the purpose for which the state sought to introduce that evidence, and weighed the probative value against the danger of unfair prejudice. In admitting some of that evidence, the trial court also cautioned the jury regarding the limited purpose for which they might consider that evidence. Therefore, we do not find that the trial court abused its discretion in admitting the evidence of prior acts, pursuant to Evid.R. 404(B), and Thomas's first assignment of error is not well-taken.

(ECF #13-1 at PageID 312-16; *Thomas,* 2019 WL 2157933, at *4-5 (citations omitted)).

As the Sixth District thoroughly explained, the prior-acts evidence was admitted to establish the victim's fear of Mr. Thomas and put her lack of physical resistance to the sexual assault in context to prove that her will was overcome by fear. This was a relevant consideration. Under Ohio law, it is illegal for a person to "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Revised Code § 2907.02(A)(2). The applicable Ohio statute defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." *Id.* at § 2901.01(A)(1). "[F]orce or threat of force can be inferred where a defendant purposefully compelled the victim to submit by employing certain objective actions that can be found to have overcome the will of the victim by fear or duress." *State v. Rupp,* No. 05 MA 166, 2007 WL 969069, at *8 (Ohio Ct. App. Mar. 27, 2007); *see also State v. Schaim,* 600 N.E.2d 661, 663 (Ohio 1992) ("A defendant purposely compels another to submit to sexual conduct by force or a threat of force if the defendant uses physical force against that person, or creates the belief that physical

43

force will be used if the victim does not submit."). As such, the prior acts were admitted for a relevant purpose.

The trial court weighed the probative value of the other-acts evidence against the danger of unfair prejudice to Mr. Thomas, and, recognizing the potential danger that a jury might consider prior bad acts as evidence the accused has the propensity to commit the charged crime, provided a limiting instruction that the prior acts, if found to be true, can only be considered to determine if the element of force was met. Mr. Thomas claims the limiting instruction was not effective because "[o]nce evidence of this nature is released on the jury, forgetting this information is impossible and the jury focused on the character of a 'bad man.'" (ECF #1 at PageID 18). Other than this conclusory statement, he offers no proof that the jury considered the evidence for any other purpose than that provided in the limiting instruction.

Mr. Thomas has not shown that the decision to admit other-acts evidence is so egregious that it resulted in the denial of fundamental fairness. Therefore, I recommend the District Court **DENY** Ground 1 as meritless.

### B. Ground 2 is meritless.

In Ground 2, Mr. Thomas admits appellate counsel raised the admission of 404(B)-other-acts evidence on direct appeal, but that appellate counsel was ineffective for not asserting additional supporting arguments. (ECF #1 at PageID 16-19). According to Mr. Thomas, his appellate counsel should have argued the trial court erred in refusing to consider other methods of proof, admitting unsubstantiated allegations without substantial proof, and not adhering to the balancing analysis under Ohio Evidence Rule 403. (*Id.*). Mr. Thomas also claims the limiting instruction was not sufficient to keep the jury from considering the other-acts evidence as

44

propensity evidence and his appellate counsel was ineffective for not asserting this on direct appeal. (*Id.* at PageID 18-19).

The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's representation was constitutionally ineffective, a habeas petitioner must show counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that he or she did not function as "counsel" guaranteed by the Sixth Amendment, and counsel's deficient performance prejudiced the defense. *Id.* at 687-88.

To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This is an extremely deferential standard, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To satisfy the prejudice requirement of *Strickland*, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694. Failure to satisfy either requirement is fatal to an ineffective-assistance-of-counsel claim. *Id.* at 697. And although the habeas petitioner must prove each element of the two-part *Strickland* test to establish an ineffective-

assistance-of-counsel claim, courts are not required to conduct an analysis under both prongs. *Id.* at 697.

My review of Mr. Thomas's brief on direct appeal reveals his appellate counsel did indeed assert the prior-acts evidence was based on unsupported allegations that were not factually or temporally related to the charged crimes. (ECF #13-1 at PageID 241). His appellate counsel also argued the evidence was so highly prejudicial that the trial court should have excluded it under Evidence Rule 403 and, additionally, indicated the limiting instruction was not effective. (*Id.* at PageID 244) ("Although the trial court, at counsel's request, eventually gave the jury a limiting instruction on the purposes for which the 404(B) evidence may be applied, the genie simply cannot be put back in the bottle after the damage has been done."). It is axiomatic that counsel cannot be ineffective for failing to make certain arguments on direct appeal when counsel did, in fact, make those arguments.

Mr. Thomas's last argument – appellate counsel should have raised as error the trial court's failure to consider the availability of other methods of proof before admitting prior-bad-acts evidence – does not warrant habeas relief. This claim fails because it is based on Federal Rules of Evidence. Mr. Thomas cites *United States v. Asher*, 910 F.3d 854 (6th Cir. 2018), in support of his contention that the trial court must consider "other methods of proof" when admitting prior-acts evidence. In that case, the Sixth Circuit reiterated the contours of the federal version of Rule 403's balancing test for excluding relevant evidence, including the consideration of whether other means of proof are available. *Id.* at 860-61 (citing *Old Chief*, 519 U.S. at 184). Obviously, the Federal Rules of Evidence do not apply to state court proceedings. Fed. R. Evid. 101(a); *see also Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) (declining to review the reliability or fairness of

scientific evidence under *Daubert* since it "concerned the Federal Rules of Evidence which is not relevant to appellant's [state court] conviction."). Counsel is not deficient for failing to raise a meritless claim. *See Rashad v. Lafler*, 675 F.3d 564, 571 (6th Cir. 2012).

I recommend the District Court **DENY** Ground 2 as meritless.

### C.     Grounds 3 and 4 are meritless.

Grounds 3 and 4 are based on the trial court's brief communication with the jury, held off the record and outside the presence of Mr. Thomas and counsel. Mr. Thomas claims in Ground 3 that the trial court violated his right to a fair trial by having direct contact with the jury outside his and counsel's presence and in Ground 4, he asserts his appellate counsel did not effectively argue this issue on direct appeal. (ECF #1 at PageID 19-21).

Before convening the jury to announce the verdict, the trial judge, on the record and in the presence of Mr. Thomas and all counsel, admitted to ex parte contact with the jury, which he described as follows:

> Before we go forward in having the Jury brought out, I want to make a part of the record that a little more than an hour ago, just shortly before 5 o'clock there was a knock on the jury room door by the jurors. My criminal bailiff answered the knock and my bailiff advised me, the Court that the Jury wanted to take a break. I advised my bailiff to allow them to do so. I thereafter entered the courtroom as the Jury was filing out, told them that after they concluded their break, I was going to bring them out into open Court and in light of the hour of the day discuss what their options were regarding continued deliberations.
>
> I did that out of the presence of either counsel for the State or Defense. The courtroom was empty of all people other than the Jury, my criminal bailiff and myself. I put that on the record now to see if either counsel finds that to be problematic in any way and if they do, they're welcome to make it part of the record at this point.

(ECF #13-2 at PageID 1680-81). Defense counsel objected to the communication with the jury, citing the Ohio Rules of Superintendence, Appendix B, Standard 16, which provides in pertinent part:

> All communications between the judge and members of the jury panel from the time of reporting to the courtroom for voir dire until dismissal shall be in writing or on record in open court. Counsel for each party shall be informed of such communication and given the opportunity to be heard.

Noting that counsel accepted "the trial court's characterization of the contact as procedural, or concerning only the schedule," the Sixth District concluded that the contact with the jury violated the applicable Ohio rule and was improper, but the record failed to demonstrate that the interaction pertained to substantive matters and therefore, Mr. Thomas "failed to satisfy the standard for demonstrating prejudicial error." (ECF #13-1 at PageID 326; *Thomas*, 2019 WL 2157933, at *9).

Mr. Thomas insists he need not show any harm resulting from the contact. He relies on *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984), for the proposition that courts commit "constitutional error without a showing of prejudice" when they prevent defense counsel from "assisting the accused during a critical stage of the proceeding." He contends the interaction occurred during a critical stage of the proceedings: jury deliberations. (ECF #16 at PageID 1777-78).

The state court's decision was not contrary to or involved an unreasonable application of established Supreme Court precedent. In *Rushen v. Spain*, 464 U.S. 114 (1983), the Supreme Court determined that an unrecorded ex parte communication between the trial judge and a juror was subject to harmless-error analysis. There, the trial court denied defense counsel's motion for a new trial, concluding that the communication "lacked any significance" and the defendant was not

prejudiced by them. *Id.* at 116. On direct appeal, the state court found the ex parte communication harmless beyond a reasonable doubt. *Id.* at 117.

On habeas review, the Ninth Circuit issued the writ "on the basis that an unrecorded ex parte communication between trial judge and juror can never be harmless error." *Id.* The Supreme Court "emphatically disagree[d]," explaining that "[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial." *Id.* at 117-18. In short, a court cannot presume prejudice from the mere fact of an ex parte communication between a trial court and the jury. The *Rushen* Court ultimately held that the constitutional error involved in the juror's ex parte communications with the judge concerning her acquaintance with alleged police informant's murder victim was harmless beyond a reasonable doubt, where the murder was not related to crimes at issue, and the communication was innocuous. *Id.* at 120-21. In accordance with Supreme Court precedent, not every ex parte conversation between a trial judge and juror violates the Constitution, *Rushen,* 464 U.S. at 118-19, and communications with a jury are presumptively prejudicial only when they concern "a matter pending before the jury," *Remmer v. United States,* 347 U.S. 227, 229 (1954).

A critical stage is "a step of a criminal proceeding, such as an arraignment, that h[olds] significant consequences for the accused." *Bell v. Cone,* 535 U.S. 685, 695-96 (2002); *see also Van v. Jones,* 475 F.3d 292, 313 (6th Cir. 2007) (describing a critical stage as one in which there is a reasonable probability that the defendant's case could suffer significant consequences from his total denial of counsel). "Cases in which the Sixth Circuit has found denial of counsel at a critical stage invariably involve a court instructing the jury about the substantive elements of an ongoing

offense or giving a deadlocked jury further instructions about how to proceed." *Valentine v. United States,* 488 F.3d 325, 335 (6th Cir. 2007) (citing *Caver v. Straub,* 349 F.3d 340, 349 n.6 (6th Cir. 2003) (counsel was absent when the jury was re-instructed "on certain elements of the offense after they had deliberated"), and *French v. Jones,* 332 F.3d 430 (6th Cir. 2003) (judge gave an improvised deadlocked jury instruction, later complained of as coercive, after hearing the jury had reached a third impasse)).

Here, the record before the Sixth District indicated the trial court's communication with the jury occurred as the jurors were leaving the courtroom for lunch and conveyed only the intent to discuss the deliberation schedule following the jury's return to the courthouse. (*See* ECF #13-2 at PageID 1680-81; *see also* Ohio App.R. 10(A) (requiring trial transcripts to be included in the appellate record)). The Sixth District did not see any indication in the record otherwise. (ECF #13-1 at PageID 326, *Thomas,* 2019 WL 2157933, at *9). Given the stage of the proceeding and the non-substantive, procedural nature of the contact, the Sixth District's determination is a reasonable application of Supreme Court precedent, rests on reasonable factual determinations, and is not a basis for habeas relief here.

Mr. Thomas next claims his appellate counsel was ineffective for failing to argue the conversation was substantive in nature and the judge "displayed his partiality" and "induced the jury unanimity," (ECF #16 at PageID 1774), *i.e.,* that he was prejudiced by the ex parte contact. After the trial court provided jury instructions and sent the jury to deliberate, the State informed Mr. Thomas it would dismiss Counts 3 and 4 and recommend that his sentences run concurrently in exchange for guilty pleas to Counts 1 and 2. (ECF #13-2 at PageID 1675-76). The judge told Mr. Thomas he would agree to concurrent sentences, thereby reducing the maximum possible sentence

from 11 to 9 years of imprisonment. (*Id.* at PageID 1676). Mr. Thomas believes this establishes bias:

> Prior to his contact with the jury he tried to get me to take a plea. Offered a better deal than prosecution. The judge deal included a 9 year cap he offered in an attempt to try and get me to sign. When I refused he was mad said he didn't care. This action shows he had an interest in the outcome.

(ECF #16 at PageID 1773). Mr. Thomas theorizes that "the jury could have picked up on his view of the case," thereby influencing the jury's verdict. (*Id.*).

This speculative inference does not establish prejudice, nor does it overcome the presumption of correctness applied to the Sixth District's factual finding that the substance of the conversation concerned only the schedule for jury deliberation. (*See* ECF #13-1 at PageID 326; *Thomas,* 2019 WL 2157933, at *9 (noting the record fails to demonstrate that the trial court's interaction with the jury pertained to substantive matters)). Because the record reveals the substance of the conversation did not pertain to matters before the jury on deliberation, Mr. Thomas cannot show he was prejudiced by the ex parte communication, rendering his claim on that basis meritless. Because this claim lacks merit, so too does Mr. Thomas's claim that his appellate counsel's performance was constitutionally deficient by failing to raise the argument in the state appellate courts. *See Rashad,* 675 F.3d at 571 (holding counsel is not deficient for failing to raise a meritless claim).

I recommend the District Court deny the claims in Grounds 3 and 4 as meritless.

**D.      Ground 5(b) is not cognizable on federal habeas review.**

In Ground 5(b), Mr. Thomas asserts his appellate counsel failed to argue that Mr. Thomas should not have received a 16-year sentence because there were no serious injuries sustained, the

victim testified she did not consider Mr. Thomas's actions as "rape," the allegations stem from an isolated incident, and he is a first-time offender. (ECF #1 at PageID 21).

Sentencing errors are state-law issues generally not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. Indeed, courts have consistently found that habeas petitioners cannot challenge the interpretation and application of Ohio's sentencing laws. *Harrison v. Parke*, 917 F.2d 1304, 1990 WL 170428, at *2 (6th. Cir. 1990) (table) ("Because it is a matter of substantive state law whether Harrison's sentences should run concurrently or consecutively, we find that the district court did not err in ruling that Harrison's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding."); *Croce v. Miller*, No. 1:15-CV-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action) (collecting cases), *report and recommendation adopted*, 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017).

Although an independent claim alleging violation in the application of state sentencing statutes is not cognizable in this proceeding, Mr. Thomas's ineffective-assistance-of-counsel claim that his appellate counsel provided constitutionally deficient assistance for failing to raise that state-law issue in state court is the proper subject of a habeas petition. *See Goff v. Bagley*, 601 F.3d 445, 464-65 (6th Cir. 2010) (holding that a habeas petitioner may raise a claim of ineffective assistance of counsel based on a failure to comply with state law). To evaluate a claim of ineffective assistance of appellate counsel based on the failure to raise a claim, the habeas court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011) (citation omitted). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that raising the issue would have changed the

result of the appeal. *Id.*; *see also McFarland v. Yukins*, 356 F.3d 688, 699-700 (6th Cir. 2004) ("[W]e have to decide whether there is a reasonable probability that the claim would have prevailed at the time counsel failed to raise it."); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). ("Because [defendant's claim] lacks merit, his appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance."). If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the habeas court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of counsel. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

Relevant to this argument, Mr. Thomas asserts his appellate counsel failed to assert that the Ohio sentencing factors do not support the imposition of a 16-year sentence, citing circumstances that a trial court considers under Revised Code §§ 2929.11 and 2929.12. (ECF #1 at PageID 21). In Ohio, an appellate court may vacate or modify a felony sentence only if it clearly and convincingly finds that the record "does not support the sentencing court's findings under [sections of Revised Code 2929.13, 2929.14, and 2929.20]" or "the sentence is otherwise contrary to law." *State v. Marcum*, 59 N.E.3d 1231 (Ohio 2016) (citing Revised Code § 2953.08(G)(2)). According to the Supreme Court of Ohio, Revised Code § 2953.08(G)(2) does not provide a basis to vacate or modify if the record does not support the sentence under Revised Code §§ 2929.11 or 2929.12. *State v. Jones*, 169 N.E.3d 649, 657-59 (2020). And because "[Revised Code §§] 2929.11 and 2929.12 are not fact-finding statutes, and absent an affirmative demonstration to the contrary, [the appellate court] presumes that the trial court considered them." *State v. Illing*, No. C-220166, 2022 WL 17332139, at *4 (Ohio Ct. App. Nov. 30, 2022) (citations omitted).

Mr. Thomas has not affirmatively demonstrated the trial court failed to consider the purposes of felony sentencing under § 2929.11 and the appropriate seriousness and recidivism factors under § 2929.12. The sentencing entry and sentencing transcripts reflect the trial court considered the purposes of sentencing and balanced the seriousness and recidivism factors. (*See* ECF #13-1 at PageID 225; ECF #13-2 at PageID 1718-19). For example, the sentencing entry explicitly noted: "The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness, recidivism and other relevant factors under R.C. 2929.12." (ECF #13-1 at PageID 225). Thus, there is not a reasonable probability that appellate counsel could have prevailed on the issue and, therefore, appellate counsel was not constitutionally deficient for failing to raise it. I recommend the District Court **DENY** the basis for relief as meritless.

E.    **Grounds 6 and 8 do not warrant habeas relief.**

In Ground 6, Mr. Thomas claims appellate counsel was ineffective for failing to raise additional arguments in the Ohio Criminal Rule 29 motion challenging the sufficiency of the evidence. (ECF #1 at PageID 22-23). Similarly, in Ground 8, Mr. Thomas claims the trial court erred when it denied his Rule 29 motion because the State failed to prove the necessary elements to sustain convictions for aggravated burglary, felonious assault, kidnapping, and rape. (*Id.* at PageID 23-26).

The Fourteenth Amendment's due process protections provide that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Accordingly, challenges to a state-court conviction based on the

sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Id.* at 321. The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship*, 397 U.S. 358, 363-64 (1970). In *Jackson*, the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* at 324.

On federal habeas review of claims challenging the sufficiency of the evidence, reviewing courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618 (6th Cir. 1993)). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if *any* rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.* The second layer of deference extends to the state appellate court's determination so long as it is not unreasonable. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2).

On direct appeal, counsel for Mr. Thomas claimed the State did not prove all the necessary elements of aggravated burglary, felonious assault, kidnapping, or rape. (ECF #13-1 at PageID 257). The Sixth District addressed the claim as follows:

> {¶55} In his fourth assignment of error, Thomas argues that the trial court erred in denying his Crim.R. 29 motion for acquittal. Pursuant to Crim.R. 29(A), the trial court may enter a judgment of acquittal if the evidence is insufficient to satisfy the statutory elements of the charged offenses. We review the trial court's ruling on a Crim.R. 29 motion using "the same standard as is used to review a sufficiency of the evidence claim."

> {¶56} "When a defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" In reviewing the evidence, "circumstantial evidence is as probative as direct evidence," with circumstantial evidence, alone, sufficient to sustain a conviction.

> {¶57} Thomas first argues insufficient evidence of trespass, to sustain a conviction for aggravated burglary, based on his testimony that he lived with R.I., and shared in paying the bills and rent. Alternatively, Thomas argues that he was present within R.I.'s home by permission, and R.I. did not ask him to leave at any time. The elements for the crime of aggravated burglary, as set forth in R.C. 2911.11(A)(1), are that no person shall trespass by force in an occupied structure with the purpose to commit any criminal offense, if the offender inflicts or attempts or threatens to inflict physical harm to another.

> {¶58} In challenging the sufficiency of the evidence, Thomas essentially argues that the jury should have deemed his testimony more credible than the testimony of R.I. or her brother on the issue of trespass. A sufficiency review, however, does not include weighing competing evidence and making credibility determinations. Therefore, while Thomas might disagree with testimony that contradicted his version of events, the state introduced sufficient evidence to demonstrate the trespass element for this offense.

> {¶59} Thomas next argues that the state produced insufficient evidence to demonstrate the "serious physical harm" element for his felonious assault conviction. Pursuant to R.C. 2903.11(A), proof of felonious assault requires proof that the offender knowingly caused physical harm to another. Again, Thomas argues insufficiency based on conflicting evidence, rather than lack of evidence. He contends that he denied assaulting R.I. in his testimony, and therefore there is no evidence of serious physical harm. This position wholly ignores R.I.'s testimony that

Thomas choked her until she lost consciousness. "[B]eing choked to the point of unconsciousness constitutes serious physical harm[.]" Furthermore, a sufficiency review does not permit consideration of conflicting evidence.

{¶60} Thomas also argues a lack of evidence, sufficient to support his kidnapping conviction, arguing no "credible evidence" of any restraint. Proof of kidnapping requires evidence that the victim's liberty was restrained by force or threat for the purpose of terrorizing or inflicting serious physical harm, as set forth in R.C. 2905.01(A).

{¶61} Thomas argues there was no credible evidence that R.I. was unable to leave or move about as she wished, and instead, he contends, his testimony indicated that R.I. was in love with him and wanted to be with him. As previously noted, a sufficiency review does not include weighing contradictory evidence. Thomas's argument, moreover, does not address R.I.'s testimony regarding the numerous ways he restrained or terrorized her, including choking, threatening to put out an eye, backhanding, dragging by the hair, and suffocating with a wet hand towel.

{¶62} Finally, Thomas argues that there was insufficient evidence to support a conviction for rape, maintaining the sexual contact with R.I. was consensual. The elements for the crime of rape, pursuant to R.C. 2907.02(A), are sexual conduct with another, when the offender purposely compels that person to submit by force or threat of force.

{¶63} Thomas maintains that R.I. consented to have sex with him because they had engaged in consensual sex in the past, and R.I. could have alerted others in the house had she not wanted to have sex with him that day. Once more, Thomas raises an issue of credibility, noting that there was no other evidence of force, aside from R.I.'s testimony.

{¶64} The force required to demonstrate rape "is that which is necessary to overcome the will of the victim." This element has been deemed satisfied by evidence of minimal physical force, such as pushing and pulling or removing the victim's clothes, with no requirement to prove non-consent or physical resistance to the sexual contact. In arguing insufficient evidence, Thomas ignores the physical abuse and threats recounted by R.I. in her testimony, maintaining instead that the state's evidence was insufficient because he testified otherwise. As previously stated, we do not weigh Thomas's credibility against the credibility of R.I. in considering whether there was sufficient evidence to support conviction.

{¶65} Considering the sufficiency of evidence as it relates to each offense, the trial court properly denied Thomas's motion for acquittal pursuant to Crim.R. 29(A). Furthermore, Thomas does not dispute that the state presented evidence as to each element of each offense, but instead argues his own testimony was more believable.

"In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Here, the evidence offered against Thomas, if believed, provided a sufficient basis from which the jury could find him guilty, beyond a reasonable doubt. Accordingly, we find Thomas's fourth assignment of error not well-taken.

(ECF #13-1 at PageID 327-31; *Thomas*, 2019 WL 2157933, at *9-11).

In Ground 8, Mr. Thomas asserts the Sixth District got it wrong, maintaining that his convictions are not supported by sufficient evidence and insinuating the Sixth District should have weighed the credibility of the witnesses. (ECF #16 at PageID 1792). But under Ohio law, such review is reserved for claims asserting the convictions are against the manifest weight of the evidence. *See State v. Martin*, 485 N.E.2d 717, 720 (Ohio Ct. App. 1983) (in a manifest weight claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered"). To the extent Mr. Thomas asserts here that his convictions are against the manifest weight of the evidence, such a claim is not appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker*, 703 F.2d at 969.

As it relates to the sufficiency of the evidence, Mr. Thomas has not shown the Sixth District's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent; nor has he shown that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Indeed, Mr. Thomas's arguments to the contrary are based on conflicting evidence he believes is more credible than the evidence the State presented in support of its case. As the Sixth District explained above, the conflicting evidence is not relevant to determining whether there is sufficient evidence on which to base a conviction.

Relevant to aggravated burglary, Mr. Thomas again claims his own testimony proves he lived with R.I. and, consequently, the State could not prove that he trespassed, an essential element of aggravated burglary. (ECF #16 at PageID 1792-95). Conflicting with Mr. Thomas's testimony is R.I.'s testimony that he moved out in December 2016, but spent the night on occasion. (ECF #13-2 at PageID 1332, 1341). Later, the couple purchased a cell-phone plan together; R.I. believed Mr. Thomas did this because he wanted to come back after moving out. (*Id.* at PageID 1341-42). The Sixth District acknowledged the disputed testimony but aptly noted that courts do not weigh competing evidence or make credibility determinations on review for sufficient evidence. (ECF #13-1 at PageID 327-28; *Thomas*, 2019 WL 2157933, at *10). The Sixth District appropriately and reasonably determined the State introduced sufficient evidence to demonstrate trespass. (*Id.*).

As to felonious assault, Mr. Thomas asserts there was insufficient evidence to prove serious physical harm, an essential element of the charge. More specifically, Mr. Thomas does not claim a lack of evidence sufficient to support a conviction, but instead asserts the evidence presented should not be believed and other evidence refutes R.I.'s claims of serious physical harm. (ECF #16 at PageID 1796-99). Again, Mr. Thomas's arguments are more akin to a manifest-weight-of-the-evidence claim for which habeas relief is not available. *Walker*, 703 F.2d at 969. Moreover, the Sixth District, interpreting Ohio law, reasonably determined R.I.'s testimony about Mr. Thomas

choking her to the point of unconsciousness constituted serious physical harm under Ohio's felonious-assault statute. (ECF #13-1 at PageID 328-39; *Thomas,* 2019 WL 2157933, at *10).

Relevant to kidnapping, Mr. Thomas claims the State did not prove he restrained R.I. with the intent to terrorize her. (ECF #16 at PageID 1795). In support, he points to R.I.'s testimony that, after Mr. Thomas backhanded her and kept her from leaving the bedroom, they went to sleep. (*Id.* at PageID 1796) ("At the time Thomas['s] specific intention was not to terrorize, because as R.I.'s testimony demonstrates, they laid down and went to sleep."). But Ohio law does not require that serious physical harm must be inflicted after the restraint of liberty to show the defendant's intent to inflict harm or terrorize the victim. *See State v. Haines,* No. 2003-L-035, 2005 WL 820539, at *13 (Ohio Ct. App. Apr. 8, 2005) (sufficient evidence was presented that restraint was committed to terrorize the victim and inflict serious physical harm when the defendant locked the victim in a crawl space after hitting the victim several times with a board), *rev'd in part on other grounds,* 860 N.E.2d 91 (Ohio 2006); *see also State v. Simko,* 644 N.E.2d 345, 351 (Ohio 1994) (brandishing a weapon before locking the victim in the bathroom was sufficient to prove intent to terrorize). In *State v. Chasteen,* CA2007-308, 2009 WL 683707 (Ohio Ct. App. Mar. 16, 2009), the court determined there was sufficient evidence to demonstrate restraint with the purpose to terrorize. In that case, the victim testified she was "scared to death" before getting into the defendant's car. *Id.* at *3. A witness who was down the street at the time of the altercation testified that she heard a male voice scream "[s]hut up, bitch. I'll cut you to pieces," and a female respond "[n]o, no, no. Don't hurt me. I'll go with you." *Id.* And, as described above, the Sixth District determined the evidence, including "choking, threatening to put out an eye, backhanding, dragging by the hair, and suffocating with a wet hand towel," all of which occurred before Mr.

Thomas restrained R.I. from leaving the bedroom, was sufficient to prove Mr. Thomas acted with the purpose to terrorize or inflict serious physical harm. As comity principles dictate, I defer to the Sixth District's interpretation of Ohio's statutes and rules and to the state court's judgment on issues of state law. *Murray*, 477 U.S. at 491; *Engle*, 456 U.S. at 128-29; *Duffel*, 785 F.2d at 133; *Tucker*, 541 F.3d at 656.

Finally, as to the conviction for rape, Mr. Thomas claims there was not sufficient evidence that he compelled R.I. to submit to sexual conduct by force or threat of force because "she never testified that she consented because of any threat, or because she thought Thomas would hurt her." (ECF #16 at PageID 1799). The Sixth District concluded otherwise, reasonably determining that R.I.'s testimony recounting both physical abuse and threats that night establishes the element of force. Moreover, R.I. testified she felt she had to have sex with Mr. Thomas "so that this can end," and had sex with him "[b]ecause [she] just wanted him to go." (ECF #13-2 at PageID 1364, 1365).

Because Mr. Thomas has not shown that the Sixth District's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings, Mr. Thomas is not entitled to habeas relief on Ground 8.

Next, I address Ground 6, in which Mr. Thomas claims his appellate counsel did not effectively argue the evidence was insufficient to support his convictions. (ECF #1 at PageID 22-23). In support of this ground for relief, Mr. Thomas recounts other evidence that purportedly refutes R.I.'s testimony or renders the testimony not credible. (*See* ECF #16 at PageID 1795-96, 1799-1807). The familiar two-part *Strickland* test for determining ineffective assistance of counsel

governs the analysis of Mr. Thomas's claim in Ground 6. To prevail under *Strickland*, a petitioner must show that (1) counsel's performance was constitutionally deficient; and (2) counsel's deficient performance so prejudiced the defense as to render the trial unfair and undermine confidence in the reliability of the outcome. *Strickland*, 466 U.S. at 687-89.

In its decision, the Sixth District noted it addressed the merits of Mr. Thomas's sufficiency of the evidence claims on direct appeal and, because it found no merit to them, concluded Mr. Thomas's appellate counsel did not provide constitutionally deficient assistance. (ECF #13-1 at PageID 607). This was a reasonable determination. As addressed above, the Sixth District determined sufficient evidence existed in the record such that any rational trier of fact could have found proof of guilt beyond a reasonable doubt. Nonetheless, Mr. Thomas asserts his convictions are not supported by sufficient evidence because the evidence is not credible. (ECF #16 at PageID 1788, 1790). This argument is without merit. As discussed twice previously, it is well established that the credibility of witness testimony is outside the scope of the state appellate court's consideration of Mr. Thomas's claim of insufficient evidence. *See Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

Because Mr. Thomas's underlying challenge to the sufficiency of the evidence claim is meritless, he cannot prevail on his ineffective assistance of appellate counsel claim. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues.").

For the foregoing reasons, I recommend the District Court **DENY** the claims in Grounds 6 and 8 as meritless.

F.      **Grounds 9(a), (b), and (c) also lack merit.**

In Grounds 9(a), (b), and (c), Mr. Thomas claims his appellate counsel provided constitutionally deficient assistance for failing to challenge the trial court's findings on whether his convictions merged as allied offenses of similar import. (ECF #1 at PageID 27).

As to the underlying claim that the trial court's failure to merge the offenses violated his federal constitutional rights (*See* ECF #16 at PageID 1814), this Court must defer to the state court's determination that the offenses were not allied offenses and merger was not required. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . .' The clause was incorporated against the states through the enactment of the Fourteenth Amendment." *Person v. Sheets*, 527 F.App'x 419, 423 (6th Cir. 2013) (citing *Benton v. Maryland*, 395 U.S. 784 (1969)). The clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citations omitted). "[A] defendant may not be subject to multiple punishments unless the state legislature intended to so punish." *Person*, 527 F.App'x at 423 (citation omitted). As the Sixth Circuit stated in *Volpe*:

> In *Blockburger v. United States*, the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." The *Blockburger test*, however, is a "rule of statutory construction," "not a constitutional test in and of itself." As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."

*Volpe*, 708 F.3d at 696-97 (citations omitted).

In Ohio, courts apply Ohio's multiple-counts statute, Revised Code § 2941.25, not the *Blockburger* test, to determine whether the legislature intended to authorize cumulative punishments. *Id.* at 697. "[W]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id.* "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal court must defer to that determination." *Id.* A challenge to the state court's application of Ohio's allied-offenses statute is not cognizable on federal habeas review. *Minor v. Wainwright*, No. 19-3206, 2019 WL 2489656, at *2 (6th Cir. June 6, 2019) (citing *Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014)).

Here, the Sixth District addressed the issue of merger in Mr. Thomas's application to reopen the direct appeal as follows:

> In his fourth assignment of error, Thomas argues his appellate counsel was ineffective by failing to argue that his convictions for aggravated burglary, felonious assault, rape and kidnapping were all allied offenses, subject to merger. Prior to sentencing, Thomas' trial counsel filed a sentencing brief, addressing the issue of merger in detail and arguing that the convictions for rape and kidnapping merged and the convictions for felonious assault and aggravated burglary merged. In response, the state argued that the record clearly demonstrated separate acts and animus, as well as separate and identifiable harm to Thomas' victim, supporting separate sentences for each offense.
>
> The law governing merger is clear. Offenses are not subject to merger for sentencing when "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." The record in this case did not support merger at sentencing. Instead, the record demonstrates separate conduct spanning several hours that including kicking in the victim's door to gain entry to the home, choking, striking, and threatening the victim, knocking her to the floor and splitting her lip when she tried to get away, and hours later, raping her. Therefore, any failure of appellate counsel to raise the issue as an assignment of error made no difference in the appeal. Accordingly, we find no basis to reopen the appeal based on this assignment of error.

(ECF #13-1 at PageID 608-09).

I defer to the state court's determination that the legislature intended cumulative punishment. The Sixth District's determination that Mr. Thomas could not show prejudice stemming from the alleged ineffectiveness of counsel is a reasonable application of the *Strickland* standard. It bears repeating that a petitioner's failure to satisfy either prong, deficiency in performance or prejudice (but for the deficiency the outcome of the proceeding would have been different), is fatal to an ineffective-assistance-of-counsel claim. *Strickland*, 466 U.S. at 697. Because Mr. Thomas cannot show that he prevails on the underlying issue of merger, he cannot establish ineffective assistance of appellate counsel on this basis. *See Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (holding it is not ineffective assistance "to present a baseless defense or to create one that does not exist").

I therefore recommend the District Court **DENY** Grounds 9(a), (b), and (c) as meritless.

G.    **Grounds 10(a), (b), (c), (d), and (e) and Grounds 11(b) and (c) meritless.**

In Ground 10, Mr. Thomas asserts five subclaims that are not procedurally defaulted. He claims his appellate counsel was ineffective for failing to argue he was prejudiced by trial counsel's failure to (a) obtain an expert to verify and investigate the AT&T phone records introduced at trial; (b) object to the improper impeachment of Alex Zilba, a defense witness; (c) object to the State's improper questioning of Mr. Thomas; (d) object to the State's improper questioning of witnesses and vouching for witness credibility; and (e) object to the prosecutor's statements that "inject[ed] themselves or opinions into the jury." (ECF #1 at PageID 28-32) (cleaned up). I discuss each in turn.

65

In Ground 10(a), Mr. Thomas acknowledges his appellate counsel raised the issue regarding the AT&T phone records but claims appellate counsel failed to assert prejudice in accordance with the *Strickland* standard. (*Id.* at PageID 28). In Grounds 11(b) and (c), Mr. Thomas raises similar claims that his trial counsel was ineffective for failing to authenticate the AT&T phone records and failing to impeach witnesses with those records. (*Id.* at PageID 33). Mr. Thomas argues that an expert witness could, through investigation of the phone records, show two witnesses perjured themselves at trial and that such a showing would have undermined their credibility and affected the trial's outcome. (*Id.*). First, Mr. Thomas emphasizes R.I.'s testimony that she ignored his calls from the night in question (ECF #13-2 at PageID 1392) and claims the records show they spoke for about eighteen minutes. (ECF #16 at PageID 1820). Next, Mr. Thomas argues Adrian Sautter, a State witness, lied when she testified R.I. called her twice that evening after Ms. Sautter left the bonfire. (*Id.* at PageID 1821).

On direct appeal, Mr. Thomas's appellate counsel raised claims of ineffective assistance of trial counsel for, among other things, failing to get a stipulation from the State or subpoena a witness who could authenticate text messages. (ECF #13-1 at PageID 246, 247). The Sixth District dispensed with the argument as follows:

> As to phone records, [Mr.] Thomas testified regarding the content of those records at trial, reading text messages and testifying regarding the content of phone conversations. Accordingly, without some argument referencing what the trial court excluded, relative to these records, [Mr.] Thomas fails to demonstrate ineffective assistance of counsel.

(*Id.* at PageID 322; *Thomas,* 2019 WL 2157933, at *7). In Mr. Thomas's pro se application to reopen the direct appeal, he raised his trial counsel's failure to obtain an expert witness to verify and investigate the phone records and his trial counsel's failure to use those records to impeach

multiple state witnesses. ECF #13-1 at PageID 498). The Sixth District characterized this argument as "only slightly different" from the argument raised on direct appeal and stated, "In finding no error in the direct appeal, we noted that [Mr.] Thomas introduced evidence regarding the content of various calls and texts at trial in an attempt to impeach the state's witness testimony regarding the events of the incident." (*Id.* at PageID 609).

The thrust of Mr. Thomas's claim is that his appellate counsel did not argue Mr. Thomas was prejudiced by trial counsel's failure to obtain an expert to authenticate the phone records because that failure prevented him from effectively cross-examining and impeaching the State's witnesses. (*See* ECF #16 at PageID 1823). He argues that if the jury knew R.I. spoke with him on the phone that evening and that R.I. only called Ms. Sautter once after she left her residence, then both R.I. and Ms. Sautter's credibility would be destroyed, there would be overwhelming doubt about the rest of R.I.'s testimony, and he would have been acquitted. (*Id.* at PageID 1820-22).

But Mr. Thomas's trial counsel did use the phone records to show inconsistencies in R.I.'s testimony and highlighted them during closing argument. The trial record shows Mr. Thomas's trial counsel attempted to elicit testimony from R.I. that she did not, in fact, ignore all of Mr. Thomas's calls on the evening in question; R.I. testified she could not remember. (ECF #13-2 at PageID 1429-30). On cross-examination, Mr. Thomas's counsel elicited testimony from Detective Langlois that he obtained the AT&T phone records as part of his investigation and acknowledged that the records documented several lengthy calls between R.I. and Mr. Thomas that very day. (*Id.* at PageID 1473, 1476). Over the State's objections that the phone records were hearsay and not authenticated, the trial court admitted the records into evidence for the jury's consideration. (*Id.* at

PageID 1566). Mr. Thomas's trial counsel referred to the phone records in closing argument and urged the jury to review them. (*Id.* at PageID 1646).

Although his counsel used the records to question the detective, and the records were submitted to the jury for its deliberations, Mr. Thomas nevertheless insists his trial counsel was ineffective for failing to authenticate them because "without authentication, there is no proof." (ECF #16 at PageID 1877). According to him, the danger in not authenticating these records is that the jury could believe Mr. Thomas typed or altered the AT&T call logs for his own purposes. (*Id.* at PageID 1823). The record belies this speculation. As noted above, the jury was aware Detective Langlois acquired the records as part of his investigation. (*See* ECF #13-2 at PageID 1473, 1476).

The trial record demonstrates the jury knew R.I. spoke with Mr. Thomas that evening, despite her testifying she did not remember doing so, and the jury still convicted him. Mr. Thomas has not shown that additional impeachment with authenticated records would further undermine R.I.'s or Ms. Sautter's credibility to create "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Thus, Mr. Thomas has failed to show his trial counsel's performance was deficient and consequently he has failed to show his appellate counsel's performance was deficient for not raising the issue. "[B]y definition, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit." *Greer,* 264 F.3d at 676. Thus, the Sixth District's decision was not an unreasonable application of the *Strickland* standard.

Consequently, I recommend the District Court **DENY** Ground 10(a) (ineffective assistance of appellate counsel) and Grounds 11(b) and (c) (ineffective assistance of trial counsel) as meritless.

68

In Ground 10(b), Mr. Thomas claims his appellate counsel was ineffective because appellate counsel argued trial counsel was ineffective in not objecting to the State's improper questioning of defense witness Alex Zilba, but did not demonstrate how the impropriety prejudiced him, as required under the *Strickland* standard. (ECF #16 at PageID 1827). According to Mr. Thomas, the improper impeachment destroyed Mr. Zilba's credibility in the eyes of the jury and, without that line of questioning, the jury would have believed his version of events and acquitted him. (ECF #16 at PageID 1830).

On direct appeal, the Sixth District determined as follows:

Next, Thomas fails to identify any prejudice resulting from the improper questions posed during the cross-examination of Alex Zilba. At trial, Zilba testified that he drove Thomas to R.I.'s house, spent the night sleeping on the living room floor, and heard nothing all night. On cross-examination, the prosecutor inquired into Zilba's misdemeanor license suspension out of Toledo Municipal Court, and his court date the day before the incident.

The State argues that Zilba placed the conviction at issue by testifying that he drove Thomas. However, the prosecutor was not seeking to discredit Zilba's claim that he drove Thomas. Instead, the fact that Zilba drove Thomas to R.I.'s home was never in dispute, and it was Zilba's loud engine that R.I. described in her testimony. The mere fact that Zilba testified he drove Thomas did not make his prior conviction for driving without a valid license relevant to the matters on trial, and even if the parties disputed whether Zilba drove that night, prior convictions were inadmissible to attack Zilba's credibility on the subject.

"Pursuant to Evid.R. 609(A), prior convictions that are either felonies or those offenses involving dishonesty or false statement are admissible into evidence for the purpose of attacking the credibility of [a witness]." Thus, the prosecutor improperly questioned Zilba regarding his prior misdemeanor conviction, as driving without a license is neither a felony nor an offense involving dishonesty or a false statement. However, while trial counsel failed to object to this line of questioning, Thomas fails to identify any prejudicial error. While admission of such testimony was contrary to Evid.R. 609(A), such error was merely harmless error, as Zilba's prior misdemeanor conviction could not have contributed to Thomas's conviction.

(ECF #13-1 at PageID 322-24; *Thomas*, 2019 WL 2157933, at *8).

69

Mr. Thomas next raised this evidentiary issue in the context of an ineffective-assistance-of-counsel claim, arguing his appellate counsel did not effectively argue that he was prejudiced by the admission of Mr. Zilba's traffic conviction. (ECF #13-1 at PageID 553). The Sixth District reiterated that it addressed the issue on direct appeal and found the error did not prejudice Mr. Thomas. (*Id.* at PageID 609-10).

The Sixth District's decision withstands AEDPA scrutiny. After finding the State improperly questioned Mr. Zilba about his prior misdemeanor conviction, the court moved to the prejudice prong of *Strickland* and properly considered whether there was "a reasonable probability that, but for counsel's error, the jury would not have convicted the defendant." *See Strickland*, 466 U.S. at 694. Under *Strickland*, a "reasonable probability" is "one sufficient to undermine confidence in the outcome." *Id.* at 694.

Mr. Thomas claims the Sixth District's determination that Mr. Zilba's misdemeanor conviction did not contribute to Mr. Thomas's own conviction was unreasonable and that he was prejudiced by the line of testimony because the jury then viewed Mr. Zilba as a criminal who lies and cannot be trusted. (ECF #16 at PageID 1831-34). He claims the trial's outcome would have been different were the evidence excluded because the jury would have believed Mr. Zilba's testimony that Mr. Thomas let him inside R.I.'s residence. (*Id.* at PageID 1832). He argues that this bit of testimony directly refuted R.I.'s statement that Mr. Thomas never left her side, and if the jury did not believe that claim, the jury could not believe R.I. was assaulted. (*Id.* at PageID 1834) ("Mr. Thomas couldn't be in the room assaulting her and letting Zilba enter at the same time.").

Mr. Thomas's strained logic ignores R.I.'s testimony that he choked her to the point of unconsciousness for undetermined periods of time (ECF #13-2 at PageID 1359) and that she

could not remember some parts of the evening (*Id.* at PageID 1363), during which Mr. Thomas could have left the room to let Mr. Zilba inside unbeknownst to her. Thus, Mr. Zilba's testimony does not undermine the timeline of events as R.I. described them. Because crediting Mr. Zilba's testimony would not necessarily contradict R.I.'s account, Mr. Thomas has not shown that Mr. Zilba's misdemeanor conviction contributed to his own convictions. Thus, he has failed to show the Sixth District's decision is contrary to, or an unreasonable application of, clearly established federal law, nor has he shown the state-court decision was based on an unreasonable determination of facts in light of the evidence presented and, therefore, he is not entitled to relief under § 2254(d). I recommend the District Court **DENY** Ground 10(b) as meritless.

Grounds 10(c), (d), and (e), Mr. Thomas argues his appellate counsel was ineffective in raising as error instances of prosecutorial misconduct. Specifically, he claims his appellate counsel should have argued trial counsel was ineffective for not objecting to the State's (c) improper cross-examination of him, (d) improper vouching for witnesses during closing argument, and (e) ingratiating itself with the jury by using language such as "we" during closing argument. (ECF #1 at PageID 29-32).

In denying the application to reopen the direct appeal, the Sixth District briefly addressed Mr. Thomas's prosecutorial-misconduct claims in Grounds 10(c) and (d) as follows:

> As to the remaining issues raised, [Mr.] Thomas placed his own credibility at issue by testifying. Therefore, the prosecutor had the same latitude in cross-examining [Mr. Thomas] as any other witness. What [Mr.] Thomas considers improper vouching, moreover, was merely inferences argued in closing, based on the evidence adduced at trial. "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.
>
> Essentially, [Mr.] Thomas argues that the prosecutor engaged in misconduct by characterizing his witnesses (including himself) as liars. However, "[i]t is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the

evidence reasonably supports the characterization." Finding nothing in the record to indicate a lack of evidentiary support for the cross-examination or argument, we find [Mr.] Thomas fails to raise a genuine issue concerning ineffective assistance of appellate counsel, generally. Accordingly, we find no basis to reopen his appeal based on this assigned error.

(ECF #13-1 at PageID 610-11). The Sixth District did not expressly address Mr. Thomas's argument in subclaim (e).

Because of the well-established principal that "appellate counsel cannot be ineffective for failure to raise an issue that lacks merit," *Greer,* 264 F.3d at 676, I first review the underlying claims of prosecutorial misconduct during closing argument. The appropriate standard of review for a claim of prosecutorial misconduct on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). Prosecutorial misconduct claims "are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004) (citation omitted). When analyzing alleged prosecutorial misconduct, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned"; the relevant question is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 180. Because the *Darden* standard is "a very general one," state courts have considerable leeway in resolving such claims on a case-by-case basis. *Parker v. Matthews,* 567 U.S. 37, 48 (2012) (per curiam). To obtain habeas relief on a prosecutorial-misconduct claim, the petitioner must show the state court's rejection of his claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Parker,* 567 U.S. at 47 (quoting *Harrington,* 562 U.S. at 103).

*Darden* demonstrates the high bar a petitioner must clear to succeed on a prosecutorial-misconduct claim. Even "universally condemned" statements in closing arguments, such as declaring the death penalty is the only way to stop the defendant from committing future crimes, referring to the defendant as an "animal" that should be kept on a leash, and expressing desire for the defendant's death and disfigurement, are not collectively sufficient. *See* 477 U.S. at 180 nn.10-12. The Supreme Court determined while the comments "undoubtedly were improper," "they did not deprive the petitioner of a fair trial" because the trial court instructed the jury that the lawyers' comments are not evidence. *Id.* at 180-81. The Supreme Court also found it significant that the prosecutor's argument did not manipulate or misstate the evidence, or implicate other specific rights of the accused, such as the rights to counsel or to remain silent. *Id.* at 181-82.

With this standard in mind, I turn to Mr. Thomas's three claims of prosecutorial misconduct. Regarding subclaim (c), Mr. Thomas takes issue with the prosecutor's questions during his own cross-examination about the credibility of other witnesses. He cites five occasions in which the prosecutor asked him on the stand if other witnesses were lying, as follows:

- whether Detective Langlois lied "when he said Deonte told me right off the bat that he hadn't been at Renee's house or seen her since December?" (ECF #13-2 at PageID 1545);

- whether Jesse Garcia lied about seeing Mr. Thomas strike R.I., put his hands on her neck, and force her to kiss him (*id.* at PageID 1546);

- whether the nurse lied when she said R.I.'s injuries were consistent with strangulation (*id.* at PageID 1546-47);

- whether the BCI examiner lied about finding Mr. Thomas's DNA in the scratches on R.I.'s neck (*id.* at PageID 1548); and

- whether R.I. made up the allegations against him (*id.* at PageID 1554).

He claims these questions were improper and that the Sixth District did not address this issue in its decision denying his application to reopen the direct appeal. (ECF #1 at PageID 30).

Generally, when a defendant testifies at trial, the prosecutor may question his credibility as she would any other witness. *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999) (citations omitted). But it is improper for the prosecutor to question a criminal defendant on the credibility of the witnesses against him because "credibility determinations are meant for the jury, not witnesses." *United States v. Dickens*, 438 F.App'x 364, 369-70 (6th Cir. 2011). But the Sixth Circuit has determined such questioning is allowed in limited circumstances, such as when a defendant "open[s] the door by testifying on direct that another witness was lying." *United States v. Joiner*, 727 F.App'x 821, 824 (6th Cir. 2018) (citations omitted).

Here, on direct examination, Mr. Thomas did accuse the government's witnesses of lying. He testified R.I. lied about not speaking with him on the telephone on the night in question (ECF #13-2 at PageID 1519), about Mr. Thomas kicking in her door (*id.* at PageID 1522, 1529), about Mr. Thomas's assaultive actions throughout the evening (*id.* at PageID 1524) ("I never assaulted her. I never drug her by her hair. That didn't happen."), and about Mr. Thomas's assaultive actions toward her during the Facebook Messenger call to Jesse Garcia (*id.* at PageID 1523), thereby implying Mr. Garcia also lied about seeing Mr. Thomas assault the victim. Thus, Mr. Thomas opened the door by testifying on direct that R.I. made up the allegations of assault and other witnesses lied. Because the prosecutor's questions were responsive to Mr. Thomas's testimony that other witnesses were lying, they were not improper. *Joiner*, 727 F.App'x at 824.

In subclaims (d) and (e), Mr. Thomas argues the State improperly vouched for the credibility of witnesses by implying personal knowledge, interjecting personal opinions, and

misstating the evidence during rebuttal closing argument. (ECF #1 at PageID 30-31, ECF #16 at PageID 1840-56). Mr. Thomas takes issue with many of the prosecutor's comments. First, he contends the prosecutor improperly commented on who was telling the truth and who was lying. (ECF #16 at PageID 1840). He emphasizes the prosecutor's statements that the SANE nurse and Jesse Garcia have "no dog in this race," the nurse is a medical professional there to do a job, and Mr. Thomas is a liar. (*Id.*). He argues it was improper for the prosecutor to state, "wouldn't we all be sympathetic to that?" when discussing the SANE nurse's approach to examining a sexual assault victim. (ECF #16 at PageID 1856). Second, Mr. Thomas claims the prosecutor misstated the evidence numerous times when she argued that to believe Mr. Thomas's version of events, the jury would have to believe that other witnesses lied, that R.I. self-inflicted or asked another person to inflict her injuries and lie about it, that R.I. planted evidence to corroborate her allegations, and that R.I. fooled an experienced detective and a SANE nurse into believing her allegations. (*Id.* at PageID 1841). Third, he argues the prosecutor's comment about a scorned woman implies personal knowledge off the record because "the statistics for defenses of rape cases is not everyday knowledge." (ECF #16 at PageID 1856).

Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the government behind that witness. *Francis,* 170 F.3d at 550. It generally involves remarks asserting a belief in the witness's credibility or comments that "imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.* (citation omitted). Prosecutors must also refrain from interjecting their personal beliefs into the presentation of the case. *United States v. Young,* 470 U.S. 1, 8-9 (1985); *see*

*also Bates v. Bell,* 402 F.3d 635, 644 (6th Cir. 2005). A prosecutor does not, however, act improperly when she explains why the evidence objectively permits the jury to find that a witness testified honestly. *United States v. Reynolds,* 86 F.4th 332, 353 (6th Cir. 2023); *United States v. Garcia,* 758 F.3d 714, 723 (6th Cir. 2014). Indeed, a prosecutor "necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins,* 567 F.3d 225, 233 (6th Cir. 2009) (quotation omitted). A prosecutor "can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee,* 526 F.3d 888, 901 (6th Cir. 2008). A prosecutor may point out the lack of evidence supporting the defense theory. *United States v. Forrest,* 402 F.3d 678, 686 (6th Cir. 2005). And a prosecutor may argue from the facts that a defense witness, including a testifying defendant, is not worthy of belief. *Portuondo v. Agard,* 529 U.S. 61, 69 (2000). Context is crucial to prosecutorial misconduct claims because breadth of the government's wide latitude to respond to the defense's strategies, evidence, and argument depends on what the defense has said or done. *Bedford v. Collins,* 567 F.3d 225, 233 (6th Cir. 2009) (citation omitted).

During the trial, defense counsel asked the SANE nurse if she was taught to be sympathetic to the victim during sexual assault examinations, arguably insinuating a bias in favor of victims such as R.I. (ECF #13-2 at PageID 1230). Jesse Garcia testified that, at the time of trial, he had a strictly platonic relationship with R.I., but they engaged in a brief sexual relationship about a month after the night in question. (*Id.* at PageID 1287, 1297). Before closing arguments, the court instructed the jury that the attorney's arguments in their opening and closing statements are not

evidence and emphasized that the jurors are the judges of the facts, the credibility of witnesses, and the weight of the evidence. (*Id.* at PageID 1591-92, 1665).

During initial closing argument, the prosecutor discussed the elements of the charged crimes, summarized the evidence, and matched the evidence to the elements to show the State met its burden of proof. (*Id.* at PageID 1604-35). In response, defense counsel first emphasized that Mr. Thomas was dating two women and lying to both of them about his relationship with the other. (*Id.* at PageID 1636). She highlighted R.I.'s testimony about being angry and jealous of the other woman and wanting Mr. Thomas to be equally hurt. (*Id.* at PageID 1637). Defense counsel then provided an overview of the evidence that "doesn't quite match up" with the State's case, all of which insinuates R.I. made up the allegations. Defense counsel urged the jury to review the photographs showing limited injuries that she argued were not consistent with R.I.'s description of that night and the resulting injuries. (*Id.* at PageID 1639-41). She noted two witnesses were in R.I.'s residence during the alleged assault but did not hear any noise that evening, nor did R.I. attempt to escape after Mr. Thomas fell asleep. (*Id.* at PageID 1642-43, 1645-46). Defense counsel intimated Jesse Garcia lied about seeing Mr. Thomas violently assault R.I. because he did not then call the police to help her. (*Id.* at PageID 1649-50). And finally, defense counsel theorized that R.I. was a scorned woman, suggesting a motive to lie. (*Id.* at PageID 1653).

During rebuttal closing argument, the prosecutor focused on picking apart the defense's theory of the case. First, she highlighted the defense's theory that R.I. was a scorned woman bent on revenge, noting it is a common response when rape is alleged and referring to the theory as "unoriginal." (ECF #13-2 at PageID 1654). Next, in a series of rhetorical questions, the prosecutor indicated that if R.I., who has a degree in criminal justice, wanted to falsely accuse Mr. Thomas,

she would have made up a more salacious story. (*Id.* at PageID 1655-56) ("If she wanted to frame him, why not call the police right away?"; "Why not make the story really good?"; "Why not tell the police he threatened her with a gun?"). The prosecutor then told the jury what else it would have to believe if it believed Mr. Thomas's version of events. (*Id.* at PageID 1656-58). The prosecutor then reminded the jury that it alone determines witness credibility. (*Id.* at PageID 1661, 1664). Finally, she summarized the evidence that supported R.I.'s claims, including the photographs of her injuries, DNA results, damage to the doorframe, testimony from Jesse Garcia and the SANE nurse, and R.I.'s testimony explaining she did not resist Mr. Thomas's sexual advances in the morning because she knew resistance would prolong the ordeal. (*Id.* at PageID 1662-65).

When viewed in context, the prosecutor did not improperly vouch for any witness's credibility. There is nothing in the record to suggest the prosecutor expressed her personal belief in any government witness's testimony or indicated the witnesses could be believed based on personal knowledge not known to the jury. Instead, the prosecutor drew reasonable inferences regarding credibility based on the evidence presented and invited the jurors to assess the witnesses' credibility for themselves. For instance, after defense counsel prompted the jury to consider the SANE nurse's failure to read R.I.'s medical record before the examination when analyzing her testimony (*id.* at PageID 1640), the prosecutor stated the nurse "has no dog in this race," and is just "a medical professional there to do a job." (*Id.* at PageID 1657). Despite Mr. Thomas's contention to the contrary, this kind of statement is not improper vouching but permissible commentary responsive to defense counsel's clear insinuation that the nurse may be biased in favor of the victim. A prosecutor is free to respond by arguing why witnesses should be believed

when defense counsel attacks the credibility of those witnesses. *United States v. Boyd*, 640 F.3d 657, 671 (6th Cir. 2011).

Likewise, the prosecutor's comment on scorned women was not improper. Defense counsel first invoked the well-known phrase "Hell hath no fury like a woman scorned" to support the defense theory that R.I. concocted these allegations because she was angry about Mr. Thomas's infidelity. (ECF #13-2 at PageID 1653). A prosecutor's remarks made in response to defense counsel's own comments are less likely to rise to the level of misconduct warranting habeas relief. *See, e.g., Darden*, 477 U.S. at 182 (one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statements were "invited by or responsive" to the defense). Moreover, generally commenting on the prevalence of a common trope used to undermine a victim's credibility does not imply to the jury that she has personal knowledge of R.I.'s truthfulness. In fact, after this initial remark the prosecutor reiterated it was the jury's role to assess witness credibility:

> Despite everything she went through with him, she stayed with him, she loved him, she loves him still. Did she really seem scornful or revengeful when she took the stand? Did anybody else see her break down when she was reading the text messages the Defendant sent her about promising to get help? Did she seem scornful or heartbroken that the man she loved just could not get the help he needed to stop this type of behavior? You assess her credibility. You alone.

(ECF #13-2 at PageID 1661).

The prosecutor's comments about various facts the jury would have to believe were also not improper because the statements were made in the context of explaining why the jury should reject Mr. Thomas's version of events as implausible, a permissible form of argumentation. *See, e.g., Gagne v. Booker*, No. 04-60283, 2007 WL 1975035, at *11-12 (E.D. Mich. July 2, 2007), *rev'd on other grounds*, 680 F.3d 493 (6th Cir. 2012). Mr. Thomas alleges the prosecutor's comments misstate the evidence presented to the jury. (ECF #16 at PageID 1848). I disagree. The

prosecutor's remarks do not mischaracterize the evidence or introduce evidence not presented at trial; rather, they direct the jury's attention to the lack of evidence to support the defense theory.

But even if the comments were improper, several circumstances make it unlikely they unfairly prejudiced Mr. Thomas. First, the allegedly objectionable content was invited by or was responsive to the defense's scorned-woman theory emphasized in closing argument. (*See* ECF #13-2 at PageID 1653). It bears repeating that a prosecutor's remarks made in response to defense counsel's own comments are less likely to rise to the level of misconduct warranting habeas relief. *See, e.g., Darden*, 477 U.S. at 182. Next, the trial court repeatedly instructed the jury that attorney arguments are not evidence. (ECF #13-2 at PageID 1092, 1592; *see, e.g., Knapp v. White*, 296 F.Supp.2d 766, 776 (E.D. Mich. 2003) (ruling that the trial court's instructions were a factor in finding habeas petitioner's claim that he was denied a fair trial based on improper prosecutorial argument meritless)). Jurors are presumed to follow the court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Thus, even if Mr. Thomas could show the prosecutor's statements were improper, he cannot establish any resulting prejudice.

Because Mr. Thomas has failed to establish the prosecutor acted improperly or that he was prejudiced by the prosecutor's conduct, Mr. Thomas has not shown his appellate counsel was deficient in failing to raise a claim of prosecutorial misconduct. *Greer*, 264 F.3d at 676 (appellate counsel cannot be ineffective for failure to raise an issue that lacks merit). As such, the Sixth District's adjudication of the claim is not an unreasonable application of *Strickland* under 28 U.S.C. § 2254(d)(1). Mr. Thomas has failed to establish by clear and convincing evidence that the decision was based on an unreasonable determination of facts in light of the evidence presented in

the State court proceedings under 28 U.S.C. § 2254(d)(2). I recommend the District Court **DENY** Grounds 10(c), (d), and (e) as meritless.

**H.      Ground 11(e) is meritless.**

In Ground 11, Mr. Thomas asserts ineffective assistance of trial counsel. Only Ground 11(e) remains because subclaims (a), (d), and (f) are procedurally defaulted and subclaims (b) and (c) were addressed above with Ground 10(a). In Ground 11(e), Mr. Thomas claims his trial counsel was ineffective for failing to present a video purportedly showing Mr. Thomas and R.I. engaging in consensual sex on the morning R.I. claimed he raped her. (ECF #1 at PageID 34; ECF #16 at PageID 1880). Mr. Thomas claims the video "proves there was no force and proves Thomas was nice, and had a positive, loving demeanor." (ECF #16 at PageID 1880).

The Sixth District addressed Mr. Thomas's asserted error as follows:

{¶43} As to the video, the trial court addressed this evidence out of the presence of the jury, just before the cross-examination of R.I., as follows:

> It's been expressed to the Court that there may in fact be a video of the sexual interaction between [Thomas] and [R.I.] who is out of the presence of the courtroom as well. I should reflect that. No witnesses are present.
>
> That has been in the possession of the Defense on [Thomas's] phone. He purportedly videotaped this interaction himself. This was not disclosed to the State and it was expressed that depending on the way the testimony comes forth from the victim, both through cross examination by defense counsel and perhaps even on redirect, that defense may want to play this video. It would be clearly within the Court's discretion to rule that this video cannot be played purely on a basis of a discovery violation, that this should have been disclosed to the State prior to trial so that they would have an opportunity to review it and deal with whatever might be displayed on this video.
>
> And even to this point, the State has still not been able to see this recording.

* * *

It's the Court's position that we'll allow cross examination to go forward. I will instruct defense counsel not to reference this recording. That if there comes a point in time during the cross examination that defense, through counsel, feels that it may be pertinent to their case, that this recording be played for the Jury. We will recess. I'll hear arguments. One – I'll let the State view it. Then I'll hear arguments in case the State would care to object. And I'll make my ruling at that time. * * *

{¶44} Contrary to Thomas's position, the trial court never ruled on admissibility of the video, but instead, indicated that should his counsel deem the video relevant during the course of R.I.'s cross-examination, the trial court could call a recess in order to provide the prosecutor an opportunity to view the video, followed by hearing outside the presence of the jury regarding admissibility. Thomas's counsel did not seek to admit the video at trial, and in arguing that the jury should have viewed the video, Thomas fails to demonstrate the relevance or the admissibility of that video, and offers no support for his assertion that, had the jury viewed his video, the outcome of his trial would have been different.

(ECF #13-1 at PageID 320-22; *Thomas*, 2019 WL 2157933, at *7).

The Sixth District's adjudication of this ineffective assistance of counsel claim is a reasonable application of *Strickland* and is based on a reasonable determination of facts. Under *Strickland*, Mr. Thomas must show his counsel performed deficiently and the deficient performance prejudiced the defense. 466 U.S. at 687. Under the prejudice prong, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* It requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112.

Trial counsel did not play the video at trial. Mr. Thomas did not attempt to introduce it into the appellate record but instead filed a motion to add evidence supporting the claims asserted in his petition for post-conviction relief. (ECF #13-1 at PageID 727). Even assuming counsel was deficient in this regard, Mr. Thomas cannot establish prejudice without producing this evidence.

*See Madison v. Parris,* No. 3:16-cv-0801, 2016 WL 4506096, at *4-5 (M.D. Tenn. Aug. 29, 2016). I recommend the District Court **DENY** Ground 11(e) as meritless.

      **I.**      **Ground 12 is meritless.**

In Ground 12, Mr. Thomas argues cumulative errors deprived him of a fair trial. (ECF #1 at PageID 35, ECF #16 at PageID 1882). The Supreme Court has not recognized cumulative error as a basis for relief in non-capital cases. *Kissner v. Palmer,* 826 F.3d 898, 903-04 (6th Cir. 2016); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). I recommend the District Court **DENY** this ground for relief as meritless.

      **J.**      **Ground 13 is not cognizable on federal habeas review.**

In Ground 13, Mr. Thomas asserts the Sixth District's decision affirming the trial court's denial of his petition for post-conviction relief was unreasonable or unconscionable in light of the facts. (ECF #1 at PageID 37, ECF #16 at PageID 1883).

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody for violations of federal law, not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Accordingly, to the extent Mr. Thomas alleges the appellate court erred in rulings on matters governed by Ohio law, his claims are not cognizable in this proceeding. *See Dickey v. Warden, Lebanon Corr. Inst.,* No. 1:08-cv-819, 2010 WL 92510, at *1 (S.D. Ohio Jan. 6, 2010) ("the decision to permit a defendant to withdraw a guilty plea is committed to the trial court's discretion, which generally is not a basis for federal habeas relief"). Moreover, the scope of the federal writ of habeas corpus does not reach second-tier complaints about deficiencies in state post-conviction

proceedings. In *Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007), the Sixth Circuit analyzed a

petitioner's challenge to the validity of the state court's conduct during his post-conviction

litigation and held:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2022). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well. (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention. *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement. *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 624 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Id.* at 853 (emphasis and alterations in original).

Here, Mr. Thomas challenges the state post-conviction proceedings and claims the Sixth

District's decision affirming the trial court's denial of his post-conviction petition pursuant to

Ohio's doctrine of res judicata was incorrect. Mr. Thomas also recounted the ineffective-assistance

claims he made to the trial court, but the posture of this claim is firmly rooted in state-law claims

alleging the trial court erred in denying his post-conviction petition. Even if he can demonstrate that some error occurred during the state post-conviction proceedings, the claim is not cognizable on federal habeas review. *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002) (holding that the habeas petitioner's claim that he was "deprived . . . of a full and fair hearing in the appellate review of his post-conviction claims" was not a cognizable ground for federal habeas relief) (citing *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986). Therefore, I recommend the District Court **DISMISS** this claim as not cognizable.

## MOTION FOR EVIDENTIARY HEARING

Given the essential need to promote the finality of state convictions, *Calderon v. Thompson,* 523 U.S. 538, 556 (1998), an evidentiary hearing may be held only when the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer,* 299 F.3d 605, 610 (6th Cir. 2002). An evidentiary hearing may be warranted when it could enable a petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief. *Schriro v. Landrigan,* 550 U.S. 465, 474-75 (2007) (citation omitted). If the record refutes the petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.* at 474. Having resolved Mr. Thomas's claims on the existing record, I find that an evidentiary hearing is unnecessary and therefore **DENY** his motion requesting a hearing.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Thomas has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether any of the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Thomas a COA with respect to any ground for relief.

### CONCLUSION & RECOMMENDATION

Mr. Thomas's claims are either procedurally defaulted, not cognizable on habeas review, or meritless. For these reasons, I recommend the District Court **DISMISS** the habeas petition and **DENY** a certificate of appealability as to each ground for relief. I also **DENY** the request for an evidentiary hearing.

Dated: October 23, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).